JASPER N. SEARLES

*vs.*

J. E. & H. THOMPSON, AS THOMPSON BROS.

An appeal will not lie from an order made on the trial dismissing an action ; the appeal must be from the judgment, or an order on a motion for a new trial.

Where it appears from the paper book that a case was settled by stipulation between the parties, and by the terms of the stipulation the case so settled was to be used on a motion for new trial ; that the motion was heard and decided, the parties having appeared upon such motion and the case settled used thereon ; the fact that no notice of motion, or grounds upon which the motion was based are found in the paper book, cannot affect the validity of the appeal from the order on such motion.

When one party to an action on the trial introduces as matter in chief admissions of the adverse party, the whole of the statements constituting such admissions must be considered.

In an action based upon representations alleged in the complaint, which are averred to be false and fraudulent, and the falsity of the representations as alleged is, upon the answer, under the rules of pleading, technically admitted ; if the plaintiff, not relying upon such technical admission, proves affirmatively upon his case in chief that the representations made were true, it is not error for the court to dismiss the action at the close of plaintiff's testimony.

This action was brought in the district court for Dakota county. The defendant Horace Thompson answered as sole survivor of the firm of Thompson Bros. The cause was brought to trial, and after the plaintiff had rested his case defendant moved to dismiss the action, which motion was granted, and plaintiff excepted. Plaintiff moved for a new trial upon a case

made and settled, which was denied, and he appeals to this court. Such portions of the pleadings as are necessary to an understanding of the nature of the action, and the testimony given upon the trial, and the grounds upon which the cause was dismissed in the court below, are sufficiently stated in the opinion.

CLAGETT & SEARLES, for Appellant.

BRISBIN & PALMER, and OFFICER & CHITTENDEN, for Respondent.

*By the Court.*—McMILLAN, J.—This is an action brought by the plaintiff to recover back the sum of $5,000, money paid to the defendants, and four certain promissory notes executed and delivered by the plaintiff to the defendants, upon certain representations made by defendants which the plaintiff claims to have been false and fraudulent.

The complaint alleges: that on the 26th of September, 1864, at Fort Wadsworth, Dakota Territory, and long afterwards, the plaintiff and one Mark W. Downie, were partners doing business under the firm name of " M. W. Downie & Co.," and the defendants J. E. Thompson and Horace Thompson, were partners under the firm of " Thompson Bros." doing business at St. Paul; that on the 26th of September, 1864, said firm of " M. W. Downie & Co.," sold to defendants a certain United States quartermaster voucher of the denomination or value of $12,000, for the sum of $11,100 ; that afterwards the plaintiff purchased the interest of Downie in the firm of " M. W. Downie & Co.," and as part of the consideration assumed the payment of all the outstanding indebtedness and liabilities of the firm of " M. W. Downie & Co.," and that Downie thereupon immediately departed to some place unknown to the plaintiff, in the Southern States.

The complaint then proceeds to state : "Afterwards, to-wit : on or about the 3d day of January, A. D. 1866, the above named defendants represented to this plaintiff that, at the time of the purchase by them of the voucher aforesaid, the said Mark W. Downie in behalf of the said M. W. Downie & Co., agreed with them, the defendants, that in case the full face of said voucher was not paid by the United States, said M. W. Downie & Co., would hold said Thompson & Bros. harmless, and pay to them any deficiency aforesaid; and that the asst. quartermaster of the United States army at St. Louis, Col. Myers, had refused to pay said voucher and had forwarded the same to Washington, with the recommendation that only the sum of $2,000 be paid on the whole amount of $12,000, and that they anticipated, in consequence, a loss of ten thousand dollars on the same, and that this plaintiff was liable to defendants for any deficiency."

The complaint then states facts showing, in substance, that the plaintiff, relying upon the representations of the defendants, paid to them at that time the sum of $5,000, to hold as security for the contemplated loss of said U. S. quartermaster voucher; that at this time the defendants undertook and agreed that in case the loss on the said voucher exceeded the amount of $5,000, so secured by plaintiff, the defendants would look to said Mark W. Downie for the balance, and not call upon plaintiff for such balance ; that on the 4th of May, 1866, the defendants notified the plaintiff by letter, that they had accepted from the United States the sum of $2,000, in payment of said $12,000 quartermaster voucher, and had thereby sustained an aggregate loss of ten thousand dollars— five thousand dollars more than had been secured by plaintiff as aforesaid.

The complaint then states : "On the 25th day of July, A. D. 1866, this plaintiff called upon the defendants at their

Searles v. Thompson Bros.

place of business in the city of St. Paul, Minnesota, whereupon
these defendants reiterated everything that they had stated to
plaintiff concerning the purchase, by them, of said quarter-
master voucher of M. W. Downie & Co., as aforesaid, and
further stated that they never would have purchased the same
had not M. W. Downie & Co. agreed to indemnify them for
any loss, and that this plaintiff, as the representative of said
firm of M. W. Downie & Co., was liable to pay to them the
further sum of $5,000 ; that they had endeavored to collect
the same from Mark W. Downie, but without success, and they
looked to plaintiff for the same." That the plaintiff, in
ignorance of the facts, placing entire confidence in the repre-
sentations of defendants, believing the same to be true, exe-
cuted to the defendants his five certain promissory notes for
the sum of one thousand dollars each, payable as stated in the
complaint ; that the first of the notes was paid, to wit: $500
on the 1st of July, 1867, and $500 on the 15th of September,
1867 ; that none of the other four notes have been paid or any
part thereof ; that after the payment of the first note, to-wit :
on or about the first of February, 1868, he ascertained the where-
abouts of Downie, and took steps to ascertain the facts concern-
ing the sale to the defendants of said U. S. voucher, and did not
hear from Downie till late in the fall of 1868, " by whom he was
informed, and on which information he believes and so charges
the facts to be, that said U. S. quartermaster voucher of $12,-
000 was sold to these defendants without any agreement on
the part of M. W. Downie & Co., aforesaid to indemnify these
defendants against any loss by reason of the non-payment by
the United States of the whole or any part thereof, and that
the only guaranty or assurance given to these defendants by
said M. W. Downie & Co., was that said voucher was genuine
and properly entered and reported on the rolls of the assist-
ant quartermaster of the U. S. army, at Fort Wadsworth, and

the plaintiff avers that said voucher was genuine, and so reported, and that the representations of these defendants to him as aforesaid were not true, and were entirely without foundation, and known by them to be so at the time they were made, as aforesaid."

The answer of Horace Thompson, surviving partner of Thompsons, denies that the defendants made any representations that any *express agreement* of indemnity or guaranty as alleged in the complaint was made by Mark W. Downie, in behalf of said M. W. Downie & Co., to defendants as to the quartermaster voucher, and alleges facts showing an implied agreement and guaranty that said claim of $12,000 was genuine, and free from fraud, error and mistake, and was in all respects valid against the government of the United States, and collectable on the whole amount thereof in the due and ordinary course of business in such cases ; and alleges other facts constituting a defence to the plaintiff's action under such implied agreement and guaranty.

The respondent interposes a motion to dismiss the appeal.

The appeal is taken from the decision of the court below dismissing the action, and also from the order of the court denying a new trial. So far as the appeal from the decision of the court dismissing the action is concerned the appeal does not lie. *Lamb vs. McCanna*, 14 *Minn.* 513, *and authorities cited.*

It appears from the paper book that the case was settled by stipulation between the parties, and that the case so settled should be used by plaintiff on motion for a new trial. It also appears that the motion for a new trial was brought on by the plaintiff, that the prepared case was used, and that the respective parties appeared on the hearing of such motion, and that the motion was denied. The grounds of the motion are not stated ; that cannot affect the validity of the appeal,

Searles v. Thompson Bros.

and in any event could only affect the plaintiff's rights as to the grounds which he might urge in this court for a reversal of the order. No objection relating to that question is urged here. This disposes of the only objections urged by the respondent in support of his motion to dismiss the appeal from the order denying a new trial. The motion to dismiss the appeal from the order denying a new trial is therefore denied.

Upon the trial of the cause the plaintiff was sworn, and his testimony tended, among other things, to show that representations were made to him by defendants that an express agreement was made by Downie at the time of the sale of the voucher in question, in effect substantially that alleged in the complaint.

The plaintiff also called as a witness in his behalf A. H. Wilder, who testified as follows: "Knew the parties; received a letter in 1868, from the plaintiff. I went with it to defendants. *Saw both of them September 25th, 1868, and gave it to them to read.*" The letter was then introduced in evidence, and the witness Wilder continued: "They said the letter was mainly correct, and that they purchased the voucher. Mr. Searles owed me, and after receiving the letter, I thought I would inquire into it. Mr. Thompson said it was a purchase. *Mr. J. E. Thompson told me that Downie did guarantee it, but gave no written guaranty.* They told me it was understood with all our customers that if the vouchers are not paid they must make them good. They spoke something about scout vouchers. The voucher I am speaking about is the hay voucher. Mr. Horace Thompson said that if they were not in so deep now they would pro rate," &c.

In the letter from Searles, the plaintiff, to Wilder which was shown to witness is the following statement: "The Messrs. Thompson told me that when Major Downie negotiated the hay voucher in 1864, it was on the understanding that if any-

thing was wrong with the voucher, the bank was to be indemnified from any loss, and that they did and always had looked to Downie and myself for protection. At this time the voucher had not been paid, but they said they would make every attempt in their power to increase the amount recommended by the chief quartermaster. But for fear of failure they required me turn over to them $5,000 of the scout vouchers." Referring to the payment which had been made by plaintiff to defendants as stated in the complaint, the letter proceeds: " All these payments were made under the impression that their statements of facts were true, i. e., that Downie agreed to hold the bank harmless in the matter. Last spring for the first time, I heard from Downie, and learned that he did not make any such promise; that the only promise he made was that the voucher was regularly entered on the A. Q. M. papers, or in other words that the voucher was regular in every particular, and such were the actual facts."

The object of Wilder's testimony, in connection with the letter, was to prove the admissions of the defendants in the interview between them and Wilder. The plaintiff having offered this testimony, the whole of the statements of the defendants must be considered.

The witness Wilder details two statements made by the defendants in the interview he had with them, one made by J. E. Thompson, the other by both the defendants. The statement by J. E. Thompson was, "that Downie did guarantee it, but gave no written guaranty." It must be understood from the statement of the witness that J. E. Thompson told him that Downie did give an express verbal general guaranty of the voucher, but not a written guaranty; and that their joint statement, that it was understood with all their customers that if the vouchers were not paid they must make them good, referred to an implied guaranty from their course of

Searle v. Thompson Bros.

business known to their customers. This is rendered more certain from the fact that the voucher in this case consisted of an account made out against the government by M. W. Downie & Co. in their own name against the United States for hay sold to the government at Fort Wadsworth, and certified by the assistant quartermaster at that point. No written guaranty was necessary in the case. These statements were clearly intended to qualify the statements in the letter, and to correct the latter so far as they conflicted with the statements made by the defendants, or either of them.

It then appeared affirmatively from the testimony upon the part of the plaintiff himself, that the representations which he alleges in his complaint to have been made were true, and not false.

Conceding, therefore, that as the complaint alleges that the defendants represented that the guaranty was an *express* one, the defendants in their answer could not, under the rules of pleading, deny such allegation, and also deny that such representations, if made, were false; and that technically the falsity of the representations were admitted; yet the plaintiff, not having relied upon such technical admission, by his own testimony affirmatively proved the truth of the representations which he alleges were made, and thus disproved his own cause of action. It would bring the administration of justice into deserved contempt to say that under such circumstances a technical rule of pleading was not overcome, and that a plaintiff disproving his own cause of action must still recover.

This being the state of the proof at the close of plaintiff's testimony the court properly dismissed the action.

The order appealed from is affirmed.