## ORRIN S. PIERCE v. GRAND ARMY OF THE REPUBLIC.[1]

June 27, 1947.

No. 34,366.

*A. S. Dowdall,* for appellant.
*Francis M. Smith,* for respondent.

FRANK T. GALLAGHER, JUSTICE.
Appeal from an order denying plaintiff's motion for a new trial.

[1]Reported in 28 N. W. (2d) 637.

Plaintiff brought this action in equity seeking an order declaring him to be a member in good standing of defendant corporation, and declaring George N. Morgan Post No. 4, of Minneapolis, Minnesota, still to be a lawfully existing post of defendant under the rules and regulations and the charter of defendant; an order and decree declaring plaintiff to be still a member in good standing of said post and declaring him still to be commander of said post; and a mandatory restraining order directed to defendant, its agencies, servants, and employes to do such acts and refrain from doing others to effectively carry out the aforesaid orders and decrees.

Prior to 1943, plaintiff was a member of the Grand Army of the Republic and for a number of years had been a member of the George N. Morgan Post of Minneapolis. From 1939 until 1943, he was commander of the Morgan post. The Grand Army of the Republic is a corporation existing under and by virtue of a special act of congress, 36 USCA, § 71, and has as its members Civil War veterans. The supreme governing body of the Grand Army is the National Encampment. The various (state) department encampments are immediately subordinate to the National Encampment, and the posts are subordinate to the departments. The words "National Encampment" have two different meanings. In one sense they refer to the governing body of the Grand Army, and in the other they refer to the national meeting of that organization.

Plaintiff's difficulty with the Grand Army began some time prior to 1943. A full hearing of the dispute was had before the National Council of Administration, a committee of defendant, at the National Encampment in Milwaukee in 1943. In settlement of the difficulty, plaintiff offered to surrender the charter of the Morgan post and accept a membership at large in the organization. This being agreeable to the committee, it was recommended to the National Encampment that the agreement be approved. This recommendation was accepted by unanimous vote of the entire group. Plaintiff was present when the vote was taken and did not object. Several months later he repudiated this agreement, and, because of this repudiation, the then National Commander, in March 1944, suspended plaintiff

from membership in the organization, such suspension to continue until the 1944 Encampment. At the 1944 Encampment at Des Moines, a resolution was adopted by the members present that plaintiff be restored to membership at large when he surrendered the property of the Morgan post to department headquarters in Minnesota. In February 1945, plaintiff, still refusing to surrender the property, brought this action. At the 1945 National Encampment at Columbus, Ohio, two resolutions were adopted by the members to the effect that the Morgan post "be and the same is hereby declared to be forfeited, disbanded and surrendered," and that plaintiff should not be restored as a member at large in the Department of Minnesota, Grand Army of the Republic, until he fulfills his promise to surrender the property of the Morgan post to the Department of Minnesota.

Plaintiff contends that this action was not valid and that the National Encampment did not have authority to take such action. The trial court decided that the action was valid.

Chapter V, Article XVI, of the rules of defendant provides that such rules shall be altered or amended only by the National Encampment by a two-thirds vote of the members present at a regular annual meeting thereof, and "That such amendments have been approved and are presented by a Department Encampment, and notice thereof has been given by the Adjutant-General at least thirty days before the assembling of the National Encampment." It further provides that "any section herein may be suspended for the time being, at any annual meeting of the National Encampment, by a unanimous vote." At the 1945 Encampment, a motion was unanimously adopted that the provisions of Chapter V, Article XVI, be suspended for the 1945 Encampment. Thereupon, Chapter V, Article I, Section 3, was amended to provide:

"Post charters shall not be surrendered while one member desires continuance of the Post, but this shall not deprive the National Encampment of the right to take a charter from a Post when it is deemed best for the good of the Order."

Chapter V, Article VI, Sections 1 and 2, was amended to read:

"Section 1. Offenses cognizable by the Grand Army of the Republic shall be:

"1. * * *

"2. Disobedience of the Rules and Regulations, or of lawful orders.

"3. * * *

"4. Conduct unbecoming a soldier and gentleman in his relations to the Grand Army of the Republic.

"5. Conduct prejudicial to good order and discipline.

"Sec. 2. Penalties shall be either:

* * * * *

"3. Suspension from membership for a specified period.

* * * * *

*"At the discretion of the National Encampment."* (Italics supplied.)

After passage of these amendments to the rules, the action of the Encampment concerning plaintiff here was taken. The trial court decided that the amendments to the rules at the 1945 Encampment were validly adopted, that resolutions concerning plaintiff were a valid exercise of the power of defendant, that the Morgan post had ceased to exist, and that plaintiff was a suspended member of defendant and entitled to no relief in this action.

The first question for consideration in this appeal is whether the amendments to the rules of the Grand Army of the Republic were validly adopted at the 1945 Encampment.

As stated in 36 USCA, § 72, the act of congress incorporating defendant:

"The object and purpose of the corporation shall be to perpetuate the name of 'The Grand Army of the Republic' and to preserve in corporate form said organization as on June 3, 1924, and thereafter maintained and conducted, and to thus provide and continue an agency and instrumentality through and by which its members, for and during the remainder of their natural lives, may assemble and

meet for the promotion of comradeship and social intercourse. The corporation shall not at any time engage in any business for pecuniary profit and gain."

Section 73 provides that the National Encampment shall be the supreme governing body and controlling authority in the Grand Army of the Republic, and § 74 provides that the rights and privileges of the members thereof shall be such as are fixed by the ordinances, rules, and regulations adopted by said National Encampment. This charter and the rules of defendant constitute a contract between plaintiff and the Grand Army of the Republic by which plaintiff has consented to be bound by his membership in that organization. Strong v. Minneapolis Auto. Trade Assn. 151 Minn. 406, 186 N. W. 800; Evans v. Chamber of Commerce, 86 Minn. 448, 91 N. W. 8. It is clear that by §§ 73 and 74 the National Encampment, the "supreme governing" body, is given the power to make rules which will affect the rights of members. In the Evans case, this court said (86 Minn. 450, 91 N. W. 9):

"This corporation derives its authority to act from the statute, and in no manner can it exceed this authority, but, inherently, it possesses the power to make all necessary rules and regulations for its government and operation, although such power may not be expressly conferred in its charter, in the creating statute, or in any other statute. This, because inherent power is an incident to all corporations, and is independent of the conferred statutory right to adopt rules not opposed to the law under which they are organized."

Chapter V, Article XVI, of defendant's rules provides for the method of amendment of the rules, but a section of this article specifically provides that "any section herein may be suspended for the time being, at any annual meeting of the National Encampment, by a unanimous vote." Defendant, by unanimous vote, did suspend the rules in regard to amendment in 1945 and thereafter made the amendments of which plaintiff complains. This method of suspending the rules was used by the National Encampment in 1944, when the Encampment amended the rules which required ten members to

be present to constitute a quorum of the National Council of Administration to read, "and any number present shall constitute a quorum" (Chapter IV, Article VI, Section 9, paragraph 1), and made several other amendments.

It appears to us that the language of Chapter V, Article XVI, providing for the suspension of "any section herein," is clear and unambiguous and must be given effect. Where the terms of a contract are clear and unambiguous, there is no room for construction or interpretation. Lidenberg v. Anchor Stove & Range Co. Inc. 207 Minn. 341, 291 N. W. 512, and cases cited at p. 345, 291 N. W. 515. See, also, 2 Dunnell, Dig. & Supp. § 1817, and cases cited in note 18.

Under the by-laws as amended in 1945, the resolutions passed by the National Encampment were clearly valid. Chapter V, Article VI, Section 2, gave the power to suspend members, under certain conditions, "At the discretion of the National Encampment." The trial court found from the evidence that those conditions existed. We have examined the record and are forced to conclude that the findings are amply justified by the evidence. Chapter V, Article I, Section 3, gave the power to take a charter from a post "when it is deemed best for the good of the Order." The trial court concluded:

"1st. That each and all of the amendments hereinbefore found were validly adopted by defendant's 1945 National Encampment meeting at Columbus, Ohio, and that defendant's Rules and Regulations as so amended now are and have ever since October 3, 1945, been in full force and effect.

"2nd. That after said amendments, defendant's National Encampment validly and legitimately exercised its power by adopting a resolution declaring George N. Morgan Post No. 4 of Minneapolis, Minnesota, to be forfeited, disbanded and surrendered and ratifying and confirming all prior acts concerning the forfeiture, abandonment or surrender of the same.

\* \* \* \* \*

"5th. That plaintiff is, in fact, a suspended member of defendant's Department of Minnesota at large.

"6th. That defendant's George N. Morgan Post No. 4 of Minneapolis, Minnesota, has ceased to exist; that the Charter thereof has been duly surrendered by the members of said post and that said Charter has been duly forfeited and surrendered and said post has been forfeited and disbanded and surrendered and that said post no longer exists by action of defendant's 1945 National Encampment.

"7th. That plaintiff is entitled to no relief whatsoever herein either in his individual capacity, as a member of said George N. Morgan Post, as the commander of the same or the acting commander of the same, or in any way on behalf of said post or any members thereof, save and except the following, viz.:

"That plaintiff shall be restored to membership at large in the Department of Minnesota at such time as he keeps his promises made to the National Encampment in Milwaukee in September, 1943, and surrenders the property of George N. Morgan Post No. 4 to the Department of Minnesota or in case of its dissolution to defendant; that upon such restoration to membership in good standing, plaintiff shall be entitled to all of his rights, privileges and honors as though such suspension had not taken place, including his status as past department commander of defendant's Department of Minnesota, and that of past acting commander of said George N. Morgan Post, and of membership in defendant's Department Encampment of said Department of Minnesota, and of defendant's said National Encampment as well as any and all other offices that plaintiff may have held in defendant, and any and all other privileges to which he was entitled under defendant's Rules and Regulations prior to such suspension; that such restoration to membership in good standing shall be subject to plaintiff paying to defendant's Department of Minnesota, or in case of its prior dissolution, to defendant, all dues validly demandable of him at the time of such restoration; and further that should defendant's said Department of Minnesota cease to exist at any time in the future during plaintiff's life, plaintiff shall become a member or shall be restored to membership in good standing, as the case may be, in defendant as

a national member at large in accordance with defendant's Rules and Regulations and practice and customs with all such rights and privileges."

We agree with the conclusions of the trial court and hold that the decision should be affirmed.

"When an action is tried by a court without a jury its findings of fact are entitled to the same weight as the verdict of a jury and will not be reversed on appeal unless they are manifestly and palpably contrary to the evidence. This rule applies whether the appeal is from a judgment, or from an order granting or denying a new trial, and whether the evidence is oral or documentary." 1 Dunnell, Dig. & Supp. § 411.

When this dispute was first before us in Pierce v. Grand Army of the Republic, 220 Minn. 552, 558, 20 N. W. (2d) 489, 493, Mr. Justice Matson said: "May these valiant soldiers in blue, all past 97 years of age, bury their differences and forget the bitterness of litigation." We heartily concur in that sentiment. The court takes judicial notice of the fact that since the oral argument of this case the Department of Minnesota of defendant has been closed. Plaintiff will be 100 years old on his next birthday. It is questionable from the record whether, because of his advanced years, he really understood the purposes of the trial. We believe that under the circumstances the kindliest thing that can be done for this aged veteran is to let this case write *finis* to his litigation. We express the hope that he will be restored as an honorable member of the Grand Army of the Republic so that he can march with his few surviving comrades until they join the thousands of former ones who have gone before them on that "long, long trail" which leads to their eternal glory.

Affirmed.