JAMES J. DOUGHERTY v. MIKE HOLM.
HARRY H. PETERSON, INTERVENER.[1]

August 16, 1950.

No. 35,376.

Sydney W. Goff and William C. Green, for petitioner.

.J. A. A. Burnquist, Attorney General, and Ralph A. Stone and Lowell J. Grady, Assistant Attorneys General, for respondent.

[1]Reported in 44 N. W. (2d) 83.

*William H. DeParcq, Thomas F. Burns,* and *Harvey Diehl,* for intervener.

FRANK T. GALLAGHER, JUSTICE.

This is an original proceeding brought under M. S. A. 202.08 to require the secretary of state to desist and refrain from printing after the name of intervener, one of the candidates for governor at the forthcoming primary election, certain distinguishing words.

The facts are not in dispute. More than one candidate with the surname Peterson has filed for the same and different offices at the September 12, 1950, primary election, the names of whom will appear on the same primary ballot. Intervener, one of the candidates for governor, seeks to have added to the ballot following his name the words "former Supreme-Court-Justice, Saint Paul." It is the contention of petitioner, who has also filed as a candidate for governor on the same ticket, that these words are not permissible under the provisions of § 205.70.

Two questions are presented for our consideration:

(1) Do the words "former Supreme-Court-Justice, Saint Paul," exceed the statutory limitation of three words?

(2) May the word "former" be used in conjunction with the words "Supreme-Court-Justice, Saint Paul," to indicate the occupation of the candidate under the statute?

■ Section 205.70 provides in part as follows:

"When the surnames of two or more candidates for the same or different offices appearing on the same ballot at any election are the same, each such candidate shall have added thereto *not to exceed three words, indicating his occupation and residence,* and upon such candidate furnishing to the officer preparing the official ballot such words, they shall be printed on the ballot with and as are the names of the candidates and immediately after his name." (Italics supplied.)

It seems clear that the legislative purpose in permitting candidates to identify themselves where two or more having the same surname appear on the ballot is to prevent confusion in the minds of voters and to enable them to cast their ballots for the candidates of their choice. In so doing, the legislature has prescribed the precise method by which such identification may be made. It has provided that only three words are permitted, but that they must state the *occupation* and *residence* of the candidate. Without this permissive legislation, there could be no identification of the candidate. It necessarily follows that the method prescribed by the legislature is exclusive. In limiting the number of permissible words to three, the legislature obviously had in mind the necessity of keeping ballots relatively short and simple. The question then is: What should be the proper construction of the term "words" as used in the statute? Many definitions of "word" are to be found. In Webster's New International Dictionary (2 ed.) (1947) we find the following definitions, among others:

"9. An articulate sound or series of sounds which, through conventional association with some fixed meaning, symbolizes and communicates an idea, without being divisible into smaller units capable of independent use; that is, the smallest unit of speech that has meaning when taken by itself; a vocable. Thus the combination of vocables, *clouds disappear,* though expressing a logical unit (a judgment) is not an ultimate sense unit, since it is divisible into two terms that can be used independently; but the *-s* of *clouds* and the *dis-* of *disappear,* though ultimate sense units, are not independent units, since they can be used only in combination; and the phonetic units (syllables) *-ap-* and *-pear* are not now units of sense at all (though they were in Latin, from which the word comes). It is to be noted that, while *appear* is a word, it cannot be so regarded in the combination *clouds disappear,* since *dis-,* which cannot stand alone, would be left as a separate

word. Hence *clouds* and *disappear* are the only units here that have all the characteristics of words."

It must be conceded that the use of the words here referred to intends to accomplish only one purpose, namely, to designate the *occupation* and *residence* of the candidate. Many occupations cannot be designated by one word standing alone in the literal sense, nor can a place of residence be so designated. The names of many cities and villages in this state contain several words if we are to construe that term in its most restricted sense, and all parties concede that the names of cities and villages should be counted as one word, although literally more are included.

In order to accomplish the obvious legislative purpose, "words," as used in the statute, must be given a meaning which will not lead to absurdity nor make impossible the accomplishment of purposes which the legislature had in mind in permitting the identification. We therefore hold that where it is necessary, in order to describe a candidate's occupation and place of residence, to use a combination of words or of compound words which express only one thought or idea—by way of designating a single office, occupation, or residence—such combination should be considered as one. In so doing, the words "Supreme-Court-Justice" express only one idea, designate only one thought, and should be counted as one word, whether hyphenated or not. It could not have been the intention of the legislature to *penalize* a person because the title of his particular public office consisted of more than one word and to *permit* another to use the title of his office merely because it has been designated with greater brevity by the constitution and laws of this state.

Election laws should be liberally construed so as to secure to the people their right freely to express their choice. 2 Dunnell, Dig. § 2915, and cases under note 78.

In Quealy v. Warweg, 106 Minn. 145, 146, 118 N. W. 673, in referring to an election law, this court said:

"* * * The statute must be liberally construed so as to effectuate legislative intention and to fully secure to the people their right to express their choice. A technical construction of the language used would be objectionable on general principles, and tend to subvert the purposes sought to be attained."

■ The second question, involving a reference to the candidate's former occupation, is more difficult. Again, we are confronted with the rights of the voters as applied to the rule of law that election laws must be liberally construed so as to secure to the people their right freely to express their choice. 2 Dunnell, Dig. § 2915. We are not concerned with the individual candidate. We are concerned with what the voters are entitled to know about the occupations of the various candidates if such candidates come within the terms of the statute so that they are entitled to designate their occupations.

Our attention has been called to an opinion of the attorney general of May 25, 1932, wherein the secretary of state was advised that it was not permissible for a candidate to use after his name on the ballot the word "ex-representative." A review of the brief submitted by the attorney general on behalf of respondent here shows that in that case many years had elapsed since the candidate had been a member of the house of representatives, and that it would of course have been absurd to permit him to indicate that his occupation was that of representative at a time many years later when he again became a candidate for the position which he had previously held. Moreover, the candidate there was presently engaged in the combined occupations of farmer and lawyer. That situation was entirely different from the one in the instant case because of the many years which had elapsed in that case between the time the candidate had been a representative and the time he again became a candidate. It is common knowledge that the term "representative" as applied to a member of our state house of representatives is not considered to be the occupation of the member. The reason is obvious. Under

our laws, although a member is elected for a specific term, the legislature convenes only once every two years unless summoned for special sessions. Its members are usually outstanding citizens in their respective communities, engaged in various occupations such as doctors, lawyers, farmers, bankers, teachers, and businessmen of all kinds. Normally, when the legislative session is over, they return to their homes and continue in the same businesses in which they were engaged when elected.

The situation in the instant case is entirely different. The record and briefs disclose that from 1936 until May 11, 1950, intervener was a member of the supreme court and was known as a justice or associate justice thereof. That had been his sole occupation in fact and by reputation for almost 14 years. There is nothing in the record before us which indicates that since his resignation from this court on May 11, 1950, he has entered upon any new occupation. Apparently, his activities have been confined to the furtherance of his candidacy for the governorship.

Significant also are the special restrictions applying to members of the supreme and district courts. Any supreme court justice or any district court judge who seeks to become a candidate for a nonjudicial office may not ethically announce his candidacy, or in any manner become an active candidate, while he occupies the bench.[2] Furthermore, Minn. Const. art. 6, § 11, provides:

[2]Canon 30, Judicial Ethics, 62 ABA Rep. (1937) pp. 1132-3, provides in part as follows:

"While holding a judicial position he should not become an active candidate either at a party primary or at a general election for any office other than a judicial office. If a judge should decide to become a candidate for any office not judicial, he should resign in order that it cannot be said that he is using the power or prestige of his judicial position to promote his own candidacy or the success of his party.

"If a judge becomes a candidate for any judicial office, he should refrain from all conduct which might tend to arouse reasonable suspicion that he is using the power or prestige of his judicial position to promote his candidacy or the success of his party.

"He should not permit others to do anything in behalf of his candidacy which would reasonably lead to such suspicion." See, also, Canon 28.

"The justices of the supreme court and the district courts shall hold no office under the United States, nor any other office under this State. *And all votes for either of them for any elective office* under this Constitution, *except a judicial office* given by the legislature or the people, during their continuance in office, *shall be void.*" (Italics supplied.)

Ethically and constitutionally, a member of the judiciary is in no position to continue his occupation as a jurist while he is a candidate for a nonjudicial office. Therefore he is deprived of the statutory occupational identification—in the absence of the acquirement of a new occupation—if the statute is to be construed so literally that no reference may be made to the occupation he pursued immediately prior to his resignation from the judiciary and the announcement of his candidacy.

When we are concerned, as here, with a remedial statute, it is well to bear in mind that, as this court observed in Minnesota Farmers Mut. Ins. Co. v. Smart, 204 Minn. 101, 106, 282 N. W. 658, 661:

"* * * 'A rigid and literal reading would in many cases defeat the very object of the statute, and exemplify the maxim that, "the letter killeth, while the spirit keepeth alive." * * * The court may carry the statute beyond the natural import of its words when essential to answer the purpose of the legislature. It is an old and unshaken rule in the construction of statutes that the *intention of a remedial statute will always prevail over the literal sense of its terms, and therefore when the expression is special or particular, but the reason is general, the expression should be deemed general.'* 6 Dunnell, Minn. Dig. (2 ed. & Supps.) § 8943, and cases cited under notes 26 and 27." (Italics supplied.)

Under the statute the question therefore is: What is the appropriate designation of the candidate's occupation and the one which clearly distinguishes him from other candidates bearing the same name?

It is our opinion, in the absence of a showing that intervener has acquired a new occupation, that his identification in an occupational sense, within the meaning and purpose of the statute, can best be accomplished by referring to his former occupation—the one which he pursued for so many years immediately preceding the announcement of his candidacy for the governorship. We therefore hold that the reference to his former and immediately preceding occupation is a proper designation on the ballot.

Order to show cause discharged.

KNUTSON, JUSTICE (dissenting).

I dissent.

I agree with the result reached by the majority in answer to the first question propounded respecting the construction to be placed upon the statutory limitation of three words. It is obvious that some occupations cannot be named in one word in the literal and restricted sense. The same is true of the names of some cities and villages in the state. It cannot be supposed that the legislature intended to exclude all such occupations and places of residence as could not be designated in three simple words within this permissive legislation. We must give the statute such construction as to make possible the accomplishment of the purpose for which the act was passed. When compound words or a combination of words express only one thought or idea, such as an occupation or place of residence, and it is necessary to use such compound words or combination of words to express the occupation or place of residence, they should be counted as one word. In so doing, we do no violence to accepted rules of construction, keeping in mind that the fundamental purpose is to ascertain and give effect to the intention of the legislature.

When we come to the second question propounded, we have a different situation. The question here is really a very simple one, namely, what is the meaning of "occupation"? In construing statutes, we are and should be governed by rules established both by statute law and by our own decisions. The expediency of a partic-

ular case should not control our decision. Pertinent rules for construing statutes established by our legislature are M. S. A. 645.08, which provides in part:

"In construing the statutes of this state, the following canons of interpretation are to govern, unless their observance would involve a construction inconsistent with the manifest intent of the legislature, or repugnant to the context of the statute:

"(1)  Words and phrases are construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a special meaning, or are defined in this chapter, are construed according to such special meaning or their definition; * * *."

Section 645.16 reads as follows:

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Every law shall be construed, if possible, to give effect to all its provisions.

"*When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.*

"When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters:

"(1)  The occasion and necessity for the law;

"(2)  The circumstances under which it was enacted;

"(3)  The mischief to be remedied;

"(4)  The object to be attained;

"(5)  The former law, if any, including other laws upon the same or similar subjects;

"(6)  The consequences of a particular interpretation;

"(7)  The contemporaneous legislative history; and

"(8)  Legislative and administrative interpretations of the statute." (Italics supplied.)

Our decisions are to the same effect. See, 6 Dunnell, Dig. & Supp. § 8940.

Unlike the answer to the first question, here there is no ambiguity, nor is there any need for judicial construction in order to give effect to the legislative intent exactly as it has been expressed by the legislature. It is a fundamental rule that construction of a statute lies only in the field of ambiguity, and where the language of the statute is clear and free from ambiguity there is no room for judicial construction. Town of Hinckley v. Kettle River R. Co. 80 Minn. 32, 82 N. W. 1088; Pierce v. Grand Army of the Republic, 224 Minn. 248, 28 N. W. (2d) 637; State ex rel. Bergin v. Washburn, 224 Minn. 269, 28 N. W. (2d) 652.

In Rice v. City of St. Paul, 208 Minn. 509, 518, 295 N. W. 529, 533, we said:

"* * * By reading the entire statute * * *, no doubt is left that it is clear and free from uncertainty or ambiguity. In that situation judicial duty requires that we give to the language chosen its plain meaning, since it is 'only where the language of an act is ambiguous, and needs, by reason of such ambiguity, to be judicially construed, that the history of such act or its title should be resorted to for aid in its construction.' Town of Hinckley v. Kettle River R. Co. 80 Minn. 32, 37, 82 N. W. 1088, 1089. Or, as stated in Railroad Comm. of Wisconsin v. C. B. & Q. R. Co. 257 U. S. 563, 589, 42 S. Ct. 232, 238, 66 L. ed. 371, 383, 22 A. L. R. 1086: 'But when, taking the act as a whole, the effect of the language used is clear to the court, extraneous aid * * * cannot control the interpretation.' "

While the word "occupation" has not been expressly defined in connection with the statute here involved, it has a recognized and well-accepted meaning. Webster's New International Dictionary (2 ed.) (1947) defines it, so far as applicable here, as follows:

"2. That which occupies, or engages, the time and attention; the principal business of one's life; vocation; business."

By way of explanation we find the following:

"* * * One's occupation is that to which one's time is devoted, or in which one is regularly or habitually engaged; * * *."

I have found no definition of *occupation* that means otherwise. It has been defined by our legislature in connection with other laws. See, M. S. A. 177.02, subd. 9. The definition quoted above from Webster's New International Dictionary is generally accepted by the courts in connection with cases of various kinds.

In Lorentz v. Aetna L. Ins. Co. 197 Minn. 205, 209, 266 N. W. 699, 701, involving the construction of a life insurance policy, we said:

"* * * An occupation here must have the same meaning as employment, that is, either working for wages when employed by another, or for the reward or profit obtained from one's own labor in an occupation or vocation."

See, also, Monahan v. Supreme Lodge, etc., 88 Minn. 224, 92 N. W. 972.

The same definition has been generally accepted by courts of other states. Industrial Comm. v. Roth, 98 Ohio St. 34, 120 N. E. 172, 6 A. L. R. 1463; Dorrell v. Norida Land & Timber Co. 53 Idaho 793, 27 P. (2d) 960. For other cases, see 29 Wd. & Phr. (Perm. ed.) p. 160.

The most cogent argument against the reasoning of the majority is the fact that the word "former" has been used preceding the office heretofore held by the candidate involved. Use of the word "former" refutes the claim that it is now the candidate's occupation. How can a position formerly held by one, which he now concedes he no longer holds, be his occupation under any definition or construction which might be placed upon that word?

As long ago as 1932, the attorney general in an opinion held exactly the opposite of what the majority now holds. An attempt has been made to distinguish that opinion upon the facts, but I do not believe any such distinction is possible, nor are there any

facts before us which would justify it. The opinion, so far as here pertinent, reads:

"Hon. Mike Holm,
Secretary of State,
Building.

"Dear Sir:

"This is in answer to your letter of May 24th, 1932, addressed to the attorney general, inquiring as to the legality of certain descriptive words which a candidate having the same surname as another candidate desires to have inserted after his name on the ballots for the coming primary election.

"Mason's Statutes of 1927, section 285, permits a candidate in such case to have added after his name on the ballot not to exceed three words, indicating his occupation and residence.

"The first proposed designation is:

" 'Ex-Representative'

followed by the name of the place of the candidate's residence. In my opinion this designation is not permissible, since it does not indicate the candidate's present occupation, but apparently refers to an office formerly held by him. The statute contemplates that the statement shall refer to the candidate's present occupation."

We have no facts before us showing whether the occupation there involved was more remote from that now under consideration. Even if it were, are we to place decision on the question of remoteness, or lack of it, of the former occupation? If so, how remote must the former *occupation* be before it ceases to come within the definition of occupation as used in this statute? Obviously, no such distinction can be made. I think that this opinion was right when written and that it is still right and should be followed. It has stood unchallenged since 1932. Several sessions of the legislature have been held since that time, but the legislature has apparently been satisfied with the construction placed upon the statute by the attorney general. As such, it is entitled to considerable weight.

The legislation under consideration is permissive only. Without such legislation, a candidate could not have any identification after his name. In providing such permission, the legislature has prescribed the exact method by which the candidate may be identified and what he may show. It is limited to two things: *occupation* and *residence*. It must necessarily follow that the method prescribed is exclusive. Here there is no ambiguity. The language under consideration is clear and unequivocal. *Occupation* can have only one meaning. There is no need for judicial construction in order to accomplish the legislative purpose exactly as the legislature has granted permission to do so.

In Ledin v. Holm, 203 Minn. 434, 281 N. W. 762, we considered this statute in connection with an attempt on the part of a candidate to insert after his name the words "Present Senator, Isanti," because of the fact that another candidate had a name which was similar but not the same. We there held that the statute did not cover a situation where the names were similar, but only those cases where the surnames were the same. The names there involved were Lodin and Ledin. We there said (203 Minn. 435, 281 N. W. 763):

"* * * The purpose of [Mason St. 1927] § 285[3] is to avoid the confusion that may arise from the appearance upon the ballot of identical surnames. It sets forth a single and exclusive circumstance under which words of designation may be added. Its framers might have gone much farther. They might have dealt with similarity as well as identity of surnames and stopped there. They might have covered similarity as well as identity of both given and surnames. But they did nothing of that kind. Of the whole field which they might have covered they have reached by express inclusion only identity of surnames. To project the statute beyond that field and make it include similarity as well as identity of surnames would in our judgment extend its effect beyond the scope limited by the clear phraseology chosen by the legislature. The result would be an

[3]As amended, now M. S. A. 205.70.

inadvertent but no less an actual amendment of the statute rather than an interpretation of it."

In this case, had the legislature intended to include former occupations as permissive identification on the ballot, it could easily have said so. In line with respondent's arguments, it would have been simple to have the statute read, "indicating his occupation if he has one, otherwise his former occupation." The simple fact is that the legislature did not do so. Were we to draft the statute, we might well permit more than three words to be used, and we might also include provisions for including former occupations, but for us to read such provision into a statute which is clear and free from doubt is not construction, but judicial legislation and amendment. It is not our function to pass laws, but to construe them.

I think that an order should issue restraining the secretary of state from including on the ballot the words here involved.

LORING, CHIEF JUSTICE (dissenting).

I agree with the views expressed by Mr. Justice Knutson.

MR. JUSTICE MAGNEY took no part in the consideration or decision of this case.