Norm COLEMAN, et al., Petitioners,

v.

Mark RITCHIE, Minnesota Secretary of State, The Minnesota State Canvassing Board, Isanti County Canvassing Board, et al., Respondents,

Al Franken for Senate and Al Franken, Intervenor–Respondents.

No. A08–2169.

Supreme Court of Minnesota.

Dec. 18, 2008.

ORDER

Petitioners Norm Coleman, et al., have filed a petition and an amended petition under Minn.Stat. § 204B.44 (2006) concerning the election for United States Senator from Minnesota held on November 4, 2008, in which petitioners ask this court to (1) order county election officials and county canvassing boards to take no additional action related to rejected absentee ballots until further order of this court; (2) direct all respondents that no rejected absentee ballots be counted in the pending administrative recount and that all issues related to such ballots are to be raised, if any party so chooses, in an election contest under Minn.Stat. ch. 209 (2006); (3) order that all rejected absentee ballot envelopes and corresponding ballots be preserved and kept segregated in a manner permitting the ballot to be linked to its envelope in the event of a future election contest; or (4) in the alternative, designate procedures specified in the petition to be followed if county canvassing boards are allowed or directed to open and count previously rejected absentee ballots. In addition, petitioners separately filed a motion for a temporary restraining order or temporary injunction.

The legislature has created processes for correction by county canvassing boards of "obvious errors in the counting and recording of the votes." Minn.Stat. §§ 204C.38 and .39 (2006). In reliance on section 204C.39 in particular, it has been suggested or recommended to county canvassing boards that they may identify previously rejected absentee ballot envelopes that were rejected in error and now open those envelopes, count those ballots, and submit amended reports of the number of votes received by each candidate to the county auditor for submission to the State Canvassing Board.

We conclude that improper rejection of an absentee ballot envelope is not within the scope of errors subject to correction under sections 204C.38 and .39, and therefore county canvassing boards lack statutory authority to count such ballots and submit amended reports on that basis.

But where the local election officials and the parties agree that an absentee ballot envelope was improperly rejected, correction of that error should not be required to await an election contest in district court. *See Andersen v. Donovan*, 264 Minn. 257, 119 N.W.2d 1 (1962); Minn.Stat. § 204B.44 (2006).

Based upon all the files, records and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. The petition of Norm Coleman et al., for relief under Minn.Stat. § 204B.44 be, and the same is, granted in part and denied in part.

2. All local election officials, county canvassing boards, the Secretary of State, and the Minnesota State Canvassing Board are enjoined from opening any previously rejected absentee ballot envelopes and from including any previously rejected absentee ballots in the administrative recount now underway, except as provided herein,

3. Because previously rejected absentee ballots that all agree were rejected improperly should be counted, and in light of the fact that the State Canvassing Board has not yet certified the final results of the recount, we order candidates Norm Coleman and Al Franken and their campaign representatives, the Secretary of State, and all county auditors and canvassing boards to establish and implement a process, as expeditiously as practicable, for the purpose of identifying all absentee ballot envelopes that the local election officials and the candidates agree were rejected in error. The local election officials shall identify for the candidates' review those previously rejected absentee ballot envelopes that were not rejected on any of the four bases stated in Minn.Stat. § 203B.12 (2006), or in Minn. Stat. § 203B.24 (2006) for overseas absentee ballots. Any absentee ballot envelopes so identified that the local election officials and the candidates agree were rejected in error shall be opened, the ballot shall be counted, and its vote for United States Senator added to the total votes cast for that office in that precinct. A candidate shall be permitted to challenge the declaration of which candidate for United States Senate such a ballot is to be counted for, using the challenge standards utilized during the pending recount process. The respective county canvassing board shall file an amended report including the absentee ballot(s) so counted, and the State Canvassing Board shall accept the amended report and include its numbers in the pending recount. If in any county there are no absentee ballot envelopes that the local officials and the candidates agree were rejected in error, the county canvassing board shall notify the State Canvassing Board that no amended report will be submitted for that county. The State Canvassing Board shall not certify the final results of the recount prior to receipt of either an amended report or a notice of no amendment from each county canvassing board. Although we recognize the extraordinary efforts of local election officials already expended related to this election and are loath to impose additional burdens, particularly at this time of year, the compelling need to move toward a conclusion requires the imposition of a deadline for completion of the process directed herein. Accordingly, all amended reports and notices of no amendment shall be transmitted to the State Canvassing Board not later than 4:00 p.m., December 31, 2008.

4. In reviewing previously rejected absentee ballot envelopes for purposes of reaching agreement whether the ballot envelope was rejected in error, the parties are reminded of their obligations under

Minn. R. Civ. P. 11 that by presenting a pleading or other paper to the court, any attorney or unrepresented party is certifying to the court that such pleading or other paper is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. In the event of a subsequent election contest under Minn.Stat. ch. 209 in which a party seeks a determination by the district court as to the propriety of the rejection of absentee ballots, parties and their counsel shall be subject to sanction for any previously rejected absentee ballot that was made available to the parties for review pursuant to paragraph 3 of this order and as to which the court determines the standards of Rule 11 were not met.

5. Petitioners' motion for a temporary restraining order or temporary injunction be, and the same is, denied as moot.

6. So as not to impair the orderly election process, this order is issued with opinions to follow.

BY THE COURT:

/s/ Helen M. Meyer
Associate Justice

MAGNUSON, C.J., and ANDERSON, G. BARRY, J., took no part in the consideration or decision of this matter.

PAGE, Justice (dissenting).[1]

Josef Stalin is alleged to have once said, "I consider it completely unimportant who ... will vote, or how; but what is extraordinarily important is this—who will count the votes, and how."

Today the court gives credence to that proposition by preventing at least some number of validly cast votes from being included in the final canvass of the election for Minnesota's United States Senate seat currently held by Senator Norm Coleman. As a result, these Minnesota citizens who cast their votes for Senator Coleman and Al Franken, as well as in other election contests on the ballot, will be disenfranchised. Therefore, I respectfully dissent.

By its order, the court holds that canvassing boards do not have authority under Minn. Stat. §§ 204C.38 and .39 (2008) to correct obvious errors in the improper rejection of validly cast absentee ballots. The court holds that the decision to reject and not count validly cast absentee ballots does not fall under the plain language of "counting or recording." I disagree with that narrow and contrived interpretation.

Notwithstanding that holding, the court orders the candidates and local election officials to review the rejected absentee ballots and determine which of those ballots were rejected in error. For ballots which they all agree were rejected in error, the court orders that those ballots be opened and counted. In effect, the court is deciding that though the legislature designated the procedures in section 204C.38 for "obvious errors in the counting or recording of the votes," the same procedures can also be used for other errors, as long as the candidates are all in agreement. The court, with one hand, takes away the canvassing boards' authority to apply the procedures of section 204C.38 to improperly rejected ballots, while with the other hand, orders the boards to do exactly what it just took away, without giving any concern to legislating from the bench.

In addition, section 204C.39 provides a procedure to correct "obvious errors in counting or recording the votes" when the candidates are not in agreement. There is no legitimate rationale as to why the pro-

---

1. I join the dissent of Justice Paul H. Anderson and my full dissent will accompany the court's full opinion. I write separately at this stage to make a number of points.

cedures in section 204C.38 are acceptable, but not the procedures in section 204C.39, for correcting improperly rejected absentee ballots. Instead, the court relies on its authority under Minn.Stat. § 204B.44 (2008) to ensure that its order does not seem inconsistent.

But "foolish consistency is the hobgoblin of little minds," and therein lies the rub. The court's ruling denies county canvassing boards which have reached the decision—that an absentee ballot was rejected in obvious error—the ability to correct those errors unless the candidates agree. The court's order may seek the peaceful way out by asking the campaigns to agree on improperly rejected ballots. But the order does not guarantee that the candidates and their political parties will agree on any rejected ballot. Instead, the court's order will arbitrarily disqualify enfranchised voters on the whim of the candidates and political parties without the benefit of the legislatively authorized procedures in section 204C.39.

It is a perverse result, indeed, for political parties and their candidates to determine whether a voter's absentee ballot was properly or improperly rejected. By making the acceptance of an improperly rejected ballot contingent on the candidates' agreement, the court has abdicated its role as the defender of the fundamental right to vote. Instead, it has made the candidates and their parties the gatekeepers—even though they are likely to be more concerned with their own election prospects than with protecting the absentee voter's right to vote.

Further, the court's order pays lip service—but only that—to the principle that all valid votes are to be counted, including those of absentee voters. We stated in *Erlandson v. Kiffmeyer*, 659 N.W.2d 724, 734 (Minn.2003), that "[t]he purpose of the absentee ballot is to enfranchise those vot-

ers who cannot vote in person." Because the requirements for absentee voting are quite stringent, we have tried to avoid disenfranchising "the very people the absentee voter laws are intended to benefit." *Id.* Today's order burdens the absentee voter's fundamental right to vote.

Those whose absentee ballots do not fall into one of the four categories for rejecting absentee ballots under Minn.Stat. § 203B.12 (2008) have, to this point, done everything the state has asked of them: they have requested absentee ballots; they have filled them out completely and correctly; and they have timely returned them to the proper authorities—all with the expectation that the government will then do its part and count their vote. But the court's order places the burden on the voter whose absentee ballot has been wrongly rejected to correct the election officials' error. First, it is unclear that a voter will be given timely notification that his or her vote has been rejected. Assuming that the voter discovers the improper rejection, the voter has three options. The voter can ask both candidates to agree that his or her vote was improperly rejected and should be counted. Failing that, the voter can file a petition under Minn. Stat. § 204B.44(d) (2008) with a judge of this court seeking to correct an error by any election judge or canvassing board. In that situation, the voter must file the petition and serve copies of the petition on the individual charged with the wrongful act. Finally, the voter may also file an election contest under the procedures listed in Minn.Stat. ch. 209 (2008). But chapter 209 is costly and burdensome. Most importantly, the scope of an election contest under chapter 209 is primarily concerned with which party received the highest number of votes, not the protection of the fundamental right to vote. Minn.Stat. § 209.12 (2008). Construing sections

204C.38 and .39 to impose such burdens on the absentee voter is irreconcilable with the principle of counting each valid vote cast.

Moreover, the court's order creates the very equal protection problem that the Petitioners contend will arise in the absence of the relief it sought. By treating valid and legally cast absentee ballots differently, depending on whether the candidates and local election officials agree that they were improperly rejected, the court allows a distinction that can only be described as arbitrary.

Finally, the court's order threatens sanctions against the attorneys for the two campaigns and their clients in a future legal proceeding if the attorneys or their respective clients unreasonably refuse to agree that particular absentee ballots were improperly rejected. But the clients, here, have no obligation to agree, whether reasonable or not. It does not appear to me that counsel for either campaign is in a position to control the outcome of that process, and I question our authority to sanction the attorneys or their clients for a decision that the attorneys' clients have every legal right to make.

The record before us indicates that at least 600 absentee ballots were improperly rejected. Under the court's order, those votes may never be counted, not because of anything that either the voters or their elected officials have or have not done, but simply because this court gives the narrowest possible reading to the language "obvious error in the counting and recording of the vote" and ignores Minn.Stat. § 204C.35 (2008), which requires the canvassing boards to determine "the number of votes validly cast for the office to be recounted." The court's order will allow these voters to be disenfranchised without my vote.

PAUL H., JUSTICE (concurring in part and dissenting in part).

> It's not the voting that's democracy,
> it's the counting.

> Tom Stoppard, *Jumpers* (1972) Act I

I agree with the majority that we should direct the parties and local election officials to make every effort possible to agree as to those absentee ballots that were rejected in error in Minnesota's 2008 race for the United States Senate. But I disagree with the majority's decision to enjoin county canvassing boards from including, in the absence of such an agreement, any previously rejected absentee ballots in the administrative recount now underway, the effect of which is to bar county canvassing boards from performing their legal duty to determine whether election judges rejected any of such ballots in error. I conclude that the majority's order is flawed because it misreads Minnesota's election laws, is internally inconsistent, and has essentially inserted this court into a political thicket based on a premise that lacks a basis under the law. In a democracy, the act of voting and having a validly cast vote accurately counted are inextricably linked. The right to have one's vote counted is as important as the act of voting itself.

> It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote and to have their votes counted, *United States v. Mosley*, 238 U.S. 383, 35 S.Ct. 904, 59 L.Ed. 1355. In *Mosley* the Court stated that it is "as equally unquestionable that the right to have one's vote counted is as open to protection ... as the right to put a ballot in a box." 238 U.S. at 386, 35 S.Ct. at 905. The right to vote can neither be denied outright, nor destroyed by alteration of ballots, nor diluted by ballot-box stuffing. As the Court stated in *Classic*, "Obviously in-

cluded within the right to choose, secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted.... The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government. And the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise."

*Reynolds v. Sims,* 377 U.S. 533, 554–55, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) (citations omitted).

Our review in this case "must be informed by the recognition that '[n]o right is more precious in a free country than having a voice in the election of those who make the laws under which as good citizens we must live'" and that "[o]ther rights, even the most basic, are illusory if the right to vote is undermined," *Erlandson v. Kiffmeyer,* 659 N.W.2d 724, 729 (Minn.2003) (quoting *Burson v. Freeman,* 504 U.S. 191, 199, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992)). We have said that in order to protect this precious right election laws should be liberally construed. In *Quealy v. Warweg,* in reference to an election law, we said that "[t]he statute must be liberally construed so as to effectuate legislative intention and to fully secure to the people their right to express their choice." 106 Minn. 145, 146, 118 N.W. 673, 118 N.W. 673, 673 (1908); *see also Petersen v. Holm,* 243 Minn. 38, 40, 66 N.W.2d 15, 16 (1954). "A technical construction of the language used would be objectionable on general principles, and tend to subvert the purposes sought to be attained." *Dougherty v. Holm,* 232 Minn. 68, 71–72, 44 N.W.2d 83, 85 (1950); *Quealy,* 106 Minn. at 146, 118 N.W. 673. My full dissent will accompany the court's full opinion

in this matter. I write separately at this stage to emphasize that the court's decision today is inconsistent with the foregoing fundamental principles that we have said apply to voting and the counting of votes.

The court's order is based on a very narrow definition of the phrase "obvious error in the counting or recording of the votes for an office" as used in Minn.Stat. §§ 204C.38 and .39 (2006). Under the majority's definition, a canvassing board can do nothing more than correct arithmetic errors in the vote totals. But I conclude that under these statutes, an error in rejecting an absentee ballot, i.e., an *obviously erroneous* exclusion of such ballot from the total number of ballots counted on election night, must necessarily be within the meaning of this phrase. Moreover, as Justice Page points out in his dissent, given that this phrase is used in both sections 204C.38 and .39, it is logically inconsistent to permit ballots to be counted under 204C.38 while prohibiting ballots from being counted under 204C.39.

The majority's narrow construction of the county canvassing board's authority to correct the mistakes of election judges is also inconsistent with the duties of the county canvassing board under Minn.Stat. § 204C.33, subd. 1 (2006). Under that statute, the county canvassing board meets after the general election to "canvass the general election returns delivered to the county auditor." Minnesota Statutes § 204C.27 (2006) defines what is "returned" to the county auditor following a general election, and it is not limited to the ballots actually "counted" on election night. The county canvassing board is therefore to canvass not just the ballots actually counted on election night, but all ballots returned to the county auditor. The county canvassing board then pre-

pares a report that states, not those votes actually counted on election night but "the number of votes received by each candidate," which need not be the same thing. And, as we ruled in *Andersen v. Donovan,* 264 Minn. 257, 267, 119 N.W.2d 1, 8 (1962), if a county canvassing board can correct errors in its initial canvass, it should be able to correct those same errors even after the initial canvass is completed.

Not only is a narrow construction of "obvious error" contrary to statute, but it is contrary to our long-standing precedent and to the principles on which that precedent is based. In *Andersen,* we observed that to hold that the results of that election "must be based on the return that everyone concedes is erroneous would be a perversion of our whole election process in the pursuit of strict adherence to statutes that need not be so strictly construed." 264 Minn. at 269, 119 N.W.2d at 9. Yet, the majority's construction of "obvious error" does exactly that: allow election returns that no one can reasonably agree reflect all validly cast ballots to stand unless the disenfranchised voters petition the courts for redress.

At this point, it is appropriate to give an example of an obvious error in counting and recording absentee ballots that can, and should, be addressed by a county canvassing board before the State Canvassing Board certifies a winner in the Senate election. Two voters, residing at the same address in a metro area suburb, cast absentee ballots in the November 4 election, but their ballots were rejected by election judges. The reason given for the rejection is listed as code number "3." Code number 3 is described under the "Reason Code Description" as being: "The voter was not registered and eligible to vote in the precinct or has not included a properly completed voter registration application." This reason for rejection tracks Minn.Stat. § 203B.12, subd. 2(3) (2006), which provides that for an absentee ballot to be marked "Accepted" election judges must be satisfied that "the voter is registered and eligible to vote in the precinct or has included a properly completed voter registration application in the return envelope." Thus it appears from intrinsic evidence that the two voters' absentee ballots were rejected because the voters were not registered to vote.

Yet there is evidence, intrinsic to the electoral system, that the absentee ballots of these two voters were improperly rejected and their votes therefore were not counted. The Secretary of State's voter identification record shows that both are not only registered voters but diligent voters. One has voted in every primary and general election since 1994, as well as a special election and a school board election.[1] The other has voted in all general

---

1.  Voting record of first voter:

| ELECTION DATE | ELECTION DESCRIPTION |
| --- | --- |
| 09/14/2004 | STATE PRIMARY |
| 11/06/2001 | SCHOOL DISTRICT ELECTION |
| 11/05/2002 | STATE GENERAL ELECTION |
| 09/10/2002 | STATE PRIMARY |
| 11/02/2004 | STATE GENERAL |
| 09/12/2000 | STATE PRIMARY ELECTION |
| 11/07/2000 | STATE GENERAL |
| 09/15/1998 | STATE PRIMARY ELECTION |
| 11/03/1998 | STATE GENERAL |
| 09/10/1996 | STATE PRIMARY ELECTION |
| 11/05/1996 | STATE GENERAL |

elections since 1994, all but two primary elections since that date, and several local elections.[2] In all of these elections, both voted in person and most recently in the primary election held on September 9, 2008.

Nevertheless, the ballots of these two voters were rejected and not counted. Based on the foregoing information, the election judges' rejection of these ballots can only be described as the result of an "obvious error in counting or recording." Not only were their votes not counted for the Senate race, but also they were not counted for any other race for which their votes were validly cast. I believe that these voters, who have in the past been conscientious and diligent in exercising their enfranchised right, would be both surprised and chagrined to know that their votes have not been counted due to obvious human error. Further, their trust and confidence in our voting system may well be significantly undermined once they learn that, as a result of an obvious error, their absentee ballots were not only rejected but that, once the error was discovered, Minnesota law as interpreted by the majority does not allow the county canvassing board to simply correct the error.[3]

The foregoing example points out a further problem with the court's order. In *Andersen* we observed that the purpose of the predecessor of Minn.Stat. § 204C.39 "obviously was to permit correction at the county level of obvious errors committed by the precinct judges in order to avoid the necessity of an election contest where possible." *Andersen,* 264 Minn. at 262, 119 N.W.2d at 5 (citing Minn.Stat.

| 11/07/1995 | SCHOOL BOARD ELECTION |
| 09/13/1994 | STATE PRIMARY ELECTION |
| 11/08/1994 | STATE GENERAL |
| 07/13/1993 | SPECIAL ELECTION |
| 11/04/2003 | GENERAL ELECTION |
| 09/12/2006 | STATE PRIMARY |
| 11/07/2006 | STATE GENERAL |
| 09/09/2008 | STATE PRIMARY |

2. Voting record of second voter:

| ELECTION DATE | ELECTION DESCRIPTION |
| --- | --- |
| 09/14/2004 | STATE PRIMARY |
| 11/06/2001 | SCHOOL DISTRICT ELECTION |
| 11/05/2002 | STATE GENERAL ELECTION |
| 09/10/2002 | STATE PRIMARY |
| 11/02/2004 | STATE GENERAL |
| 11/07/2000 | STATE GENERAL |
| 09/15/1998 | STATE PRIMARY ELECTION |
| 11/03/1998 | STATE GENERAL |
| 11/05/1996 | STATE GENERAL |
| 09/13/1994 | STATE PRIMARY ELECTION |
| 11/08/1994 | STATE GENERAL |
| 11/04/2003 | GENERAL ELECTION |
| 09/12/2006 | STATE PRIMARY |
| 11/07/2006 | STATE GENERAL |
| 09/09/2008 | STATE PRIMARY |

3. I note that under 204C.39, subd. (1), if a candidate disagrees with the decision made by the county canvassing board, the candidate may without unreasonable delay apply to the district court for relief.

§ 204.30 (1961)). I conclude that under the statutory scheme in place, it does not and should not fall to the courts of this state to correct errors that other branches of government acknowledge.

I have three summary observations. First, I am perplexed by the petitioners' position that county canvassing boards do not have the ability to review and correct obvious errors in the counting and recording of absentee ballots. Under Minnesota's election system, county canvassing boards are given considerable authority and discretion to fulfill their duty to accurately count votes cast in an election. As indicated above, I conclude that Minnesota's statutory scheme allows county canvassing boards to correct obvious errors before the State Canvassing Board certifies a winner in any given election. I do not understand why petitioners are so reluctant to have this statutory scheme take its normal course so that the county canvassing boards can count absentee ballots that have undisputedly been rejected improperly. This process allows the State Canvassing Board to reach a result without excluding ballots that are undisputedly valid.

Second, I am concerned by what I see as an inconsistency in the majority's opinion, which narrowly construes the term "counting and recording errors," thus limiting the ability of county canvassing boards to deal with anything other than arithmetic errors but nevertheless directs the parties to make every attempt to agree unanimously as to what errors in counting and recording have been made in counting absentee ballots. I appreciate the majority's attempt to see that some of the improperly rejected absentee ballots are counted. But the remedy it has provided was not requested by the parties, and I am not sure can be properly ordered by the court under Minn. Stat § 204B.44 (2006). More-

over, the inquiry ordered by the court and the process that this inquiry involves obviously extends beyond the majority's interpretation of what a county canvassing board is legally authorized to do. As Justice Page points out, the majority has essentially issued a directive that cannot be fulfilled by county canvassing boards in light of the majority's narrow interpretation of the phrase "counting and recording."

Finally, I note that, although I disagree with the majority's order issued today, it is important to keep in mind that this order is a result of a preliminary skirmish in what appears to be an extended legal contest regarding Minnesota's 2008 Senate election. Winston Churchill is reputed to have once said, in an admiring tone, that Americans ultimately do the right thing after they have exhausted all the other alternatives. Sometimes, the wheels of justice and due process take time to fully turn. While I believe that we have incorrectly exhausted one alternative today, I have complete confidence that ultimately the right thing will be done and all validly cast absentee ballots will be properly counted.

I respectfully concur in part and dissent in part.