THE PEOPLE *ex rel.* Oliver P. Powell *et al.*

*v.*

JOHN RUYLE *et al.*

1. ELECTION—*"returns" from which vote of precinct should be counted.* The tally list required to be sent to the county clerk is a constituent part of the "returns" from the board of election of a precinct, and where a doubt arises as to the number of votes cast upon the question of adopting township organization, from the informal character of the certificate of the election officers, the number being set down below instead of above their signatures, it is proper to consider the tally list, and from the two count the votes thus appearing to have been cast on the question.

2. The returns of an election consist of the certificate of the officers conducting the same, entered on the poll books, together with a list of voters, and one of the tally lists, all of which are to be carefully enveloped and sealed, and delivered to the county clerk. From these the abstract of the vote is to be made.

This was a proceeding by *mandamus,* commenced in this court by the relators against the county commissioners of Jersey county.

Messrs. PALMER, PALMER & ROSS, for the relators.

Messrs. ROBINSON, KNAPP & SHUTT, for the respondents.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

At the general election held in November, 1878, there was submitted to the voters of the county of Jersey, in this State, to be voted upon at said election, the question of the adoption of township organization in that county.

The result of the vote taken being claimed to have been in favor of township organization, this petition for a writ of *mandamus* was filed in this court to compel the respondents, who constitute the board of county commissioners of Jersey county, to proceed and appoint three commissioners to divide the county into towns, as required by the fifth section of the Township Organization act. The answer of the respondents

sets úp, in defence, that there is no sufficient evidence on file in the office of the county clerk of the county that a majority of the votes cast at said election were given in favor of township organization.

The whole question rests upon the vote of Grafton precinct, —whether or not it shall be counted.

In Grafton precinct the certificate of the election officers was made upon the poll book, on printed blanks furnished, and was in the usual form; and after specifying, in detail, the names of the candidates for the various offices voted for, and the number of votes received by each, it concludes thus, (printed matter in roman, written matter in italics,):

> Certified by us: *Jacob Godfrey,*   } Judges
> *James R. Bell,*   } of the
> *George N. Slaten,* } election.
>
> Attest: *Thaddeus A. Slaten,* } Clerks of the
> *B. F. Porter,*   } election.

Beneath the signatures were written these words:

"For township organization, received one hundred and ninety-one votes.

"Against township organization, received seventy-two votes."

This certificate was accompanied, when sent to the office of the county clerk and received there, with a tally list, from which it appears, in the usual form:

For township organization, - - - - - 191
Against township organization, - - - - - 72

On the 6th day of November, 1878, as required by the statute, the county clerk, with the assistance of two justices of the peace of the county, opened the returns and made an abstract of the vote cast upon this question, which was as follows:

"Abstract of votes for and against township organization, given in the county of Jersey, and State of Illinois, on Tuesday, the 5th day of November, A. D. 1878:

"The total number of votes cast in said county was twenty-eight hundred and fifty-eight (2858).

"For township organization, fourteen hundred and fifty-nine votes (1459).

"Against township organization, thirteen hundred and ninety-nine votes (1399).

"The vote in Grafton precinct, in said county, was not certified to as required by statute, and the same, therefore, can not be lawfully counted by the board of canvassers. The uncertified vote of Grafton precinct is:

"For township organization, one hundred and ninety-one votes, - - - - - - - - - 191

"Against township organization, one hundred and four votes, - - - - - - - - 104

"Total vote cast in Grafton precinct, two hundred and ninety-five, - - - - - - - - 295

"The legal vote, therefore, cast on the question of township organization, is as follows:

"For township organization, twelve hundred and sixty-eight votes (1268).

"Against township organization, twelve hundred and ninety-five votes (1295).

"We, the undersigned, justices of the peace of the county above named, were this day taken to the assistance of the county clerk of said county, and the poll books for the aforesaid election were opened, and the foregoing abstract made in our presence, at the clerk's office in Jerseyville, in said county, this 6th day of November, A. D. 1878.

GEO. C. COCKRELL, J. P. [L. s.]

ROBERT BURGESS, J. P. [L. s.]"

—Which was duly filed and spread upon the records.

It is said that this abstract of votes constitutes the only evidence upon which the respondents can act, and that it shows that the total vote cast at the election was 2858, and for township organization only 1268.

In another part of the abstract, however, it is stated that there were 1459 votes cast for township organization, which would make the requisite majority.

But, it is said, this statement is wholly irrelevant, and made from some illegal and incompetent information the canvassers were in possession of. If the statement rested upon information contained in the returns, we do not think it is to be disregarded as made without warrant. The provision of the Township Organization act is: "If it shall appear, by the returns of said election, that a majority of the legal voters of said county are for township organization, then the county so voting in favor of its adoption shall be governed by, and be subject to, the provisions of this act," etc. Rev. Stat. 1874, page 1066, § 4.

The character of the "returns" of the election under the Township Organization law is defined in section 3 of that act, by reference to the law regulating the election of county officers. Rev. Stat. 1874, page 459, §§ 61, 62.

The "returns" consist of the certificate of the officers conducting the election, entered in the poll books, together with a list of voters and one of the tally lists, all which are to be carefully enveloped and sealed up, and delivered to the county clerk; and these are the "returns" which the county clerk, within seven days after the election, with the assistance of two justices of the peace, is required to open and make an abstract of the votes, as was done in this case. The tally list is a constituent part of the "returns," and it properly showed the number of votes for and against township organization. If a doubt arose as to the number voting for and against township organization in Grafton precinct, from the informal character of the certificate of the election officers,—the statement of such number being set down in the certificate below, instead of above, the signatures of their names,—it would be entirely removed by the inspection of the tally list. On comparing together the certificate and the tally list, there could be no doubt as to the number of votes given for and against township organization in Grafton precinct, and this as appearing by the "returns," and by the certificate itself, showing the statement of such number to be a part of such certificate, as intended to

be embraced therein. As said in *People* v. *Hilliard*, 29 Ill. 425: "The plain duty of the board was to make the abstract from the returns, and give the certificate to the person who appeared by the returns to have received the highest vote. The question in all such cases should be, whom did a majority of the qualified voters elect? Form should be made subservient to this inquiry, and should not rule in opposition to substance."

We regard, then, the first statement which appears in the abstract made by the canvassers, that 1459 votes were cast for township organization, as showing the number of votes so cast, as appearing from the returns, and as the statement which should be accepted as the true one, and the one which should prevail; and that the subsequent statement, of 1268 as the number of the votes so cast, should be rejected, as evidently being based merely upon the informality in the certificate of the election officers of Grafton precinct, and giving undue effect to such informality.

The writ of *mandamus* is awarded, as prayed for.

*Mandamus awarded.*

SCHOLFIELD, J., dissents.