# William R. Patton et al. v. The People ex rel. Henry A. Neal.

1. CITY COUNCIL—*Canvass of the Returns of an Election.*—In canvassing the returns of an election the city council do not act as judges of the election and qualification of its own members, but as canvassers of the returns of the election of incoming city officers in pursuance of

the duty imposed by Sec. 10 of Art. 4, Ch. 24, R. S., which is to examine and canvass the returns and declare the result, and cause a statement thereof to be entered upon its journal.

2. SAME—*Duty in Canvassing Returns, Ministerial.*—The duty of a city council in canvassing the returns of an election is purely ministerial; it determines nothing judicially. It may probably judge as to whether the returns are in due form, but such action is not judicial, and after that, it can only compute the votes cast for the several candidates and declare the result.

3. SAME—*Its Action may be Controlled by Mandamus.*—It is the duty of a city council, when acting as a canvassing board, to solve for itself correctly all questions as to the form of the returns, both as to the fact and the law, as a part of its ministerial duty, and this duty it may be compelled to perform by mandamus.

4. ELECTIONS—*Canvass of the Returns.*—In arriving at the result of an election, the canvassing board is not to consider the judges' certificate alone, or any other constituent of the returns, as a controlling force, but all are to be considered, and the result is to be found from a consideration of all which alike and together constitute the returns to be canvassed.

5. SAME—*Failure of the Council to Canvass the Returns—The Remedy.*—Where the returns of an election have not been canvassed and the result declared, as intended by the statute, mandamus is the appropriate remedy.

**Mandamus.**—To compel a city council to canvass the returns of an election. Appeal from the Circuit Court of Coles County; the Hon. FRANCIS M. WRIGHT, Judge, presiding. Heard in this court at the May term, 1895. Affirmed. Opinion filed December 21, 1895.

A. J. FRYOR, JAMES W. CRAIG and CHAS. C. LEE, attorneys for appellants, contended that as long as there is from the returns any room for reasonable doubt, mandamus will not lie.

Mandamus is an extraordinary remedy, the writ being one of the highest known to the law, and it only issues against a public officer or tribunal when the law imperatively enjoins the performance of a specified act or duty which the officer or tribunal refuses to perform. There is no proposition more firmly settled than that where official action depends upon the exercise of the judgment and discretion of the officer, courts can not interfere to dictate how the officer shall act, or what judgment he shall give. Board of Commissioners ex rel. City of Washington (Ind.),

49 N. W. Rep. 686; High, Extr. Remedies, No. 42 *et passim*.
As long as there is any room for reasonable doubt as to
whether or not the matter depends upon the result of an
inquiry or investigation into the facts, or which involves
the hearing and consideration of evidence which is to con-
trol the action of the officer or tribunal, courts will not un-
dertake to review the conclusion or judgment collaterally,
in a mandamus proceeding, after the officer or body has
acted.    Holliday v. Henderson, 67 Ind. 103; People v. Com-
mon Council, 78 N. Y. 33; Board of Commissioners of Ham-
ilton County v. State, 113 Ind. 179; 15 N. E. Rep. 258.

F. K. DUNN, attorney for appellees.

The duties of the city council as a canvassing board are
purely ministerial.    The People v. Hilliard, 29 Ill. 413;
Lewis v. Coms. Marshall Co., 16 Kan. 102; 22 Am. Rep.
275; The People v. Head, 25 Ill. 325; The People v. Kil-
deuff, 15 Ill. 492; Elisha Strong, Petitioner, 20 Pick. 484.

Mandamus will lie to compel a true canvass of the returns,
even though a certificate has been issued to another, who
has been commissioned, and the canvassing board has ad-
journed.    The People v. Rives, 27 Ill. 242; The People v.
Nordheim, 99 Ill. 553; The People v. Hilliard, 29 Ill. 413;
The People v. Matteson, 17 Ill. 167; State of Florida v.
Gibbs, 7 Am. Rep. 233; 4 Wait's Actions and Defenses, 368.

Even a discretionary power, if exercised with manifest in-
justice, will be controlled by mandamus.    Dental Exam-
iners v. The People, 123 Ill. 227; Village of Glencoe v. The
People, 78 Ill. 382; Zanone v. Mound City, 103 Ill. 552;
Stephens v. The People, 89 Ill. 337.

The mere ascertaining of the amount obtained by the
multiplication, addition or subtraction of given numbers,
presents no question of fact.    People v. Supervisors, 125
Ill. 9.

MR. PRESIDING JUSTICE PLEASANTS DELIVERED THE OPINION
OF THE COURT.

At the regular city election in the city of Charleston on

the third Tuesday of April, 1895, William R. Highland and Henry A. Neal were candidates for the office of mayor. The city was divided into four wards. Appellants, who composed the city council, at a meeting held as provided by ordinance for the purpose of canvassing the returns, referred the matter to a committee of three of their number, of whom a majority found and reported the result as to that office to be that Highland received 628 votes and Neal 625. A motion being thereupon made and seconded that the report be received and the candidates as named be declared elected, an amendment was offered to receive it on all except Highland, who was defeated by a tie vote—the mayor, Patton, not voting—and the original motion was then adopted by a vote of four to three, one of the aldermen who had voted for the amendment not voting. A motion then made, that the candidates respectively reported as having received a majority of the votes be declared elected, was carried unanimously as to each except Highland for mayor, and as to him by a vote of four to three. These proceedings appear more fully in the journal of the city council.

The only question in the case arises upon the returns of the election in the second ward. As to them the evidence is that the poll books, tally list and judges' certificate—which are the constituents of the returns (The People, etc., ex rel. v. Ruyle, 91 Ill. 528) seem not to agree. The list of voters in the poll book numbers 347; the certificate of the judges, attested by the clerks of the election, is that "W. R. Highland received 188 votes for mayor," and "H. A. Neal received 158 votes for mayor," making only 346 in all; the tally list shows 193 lines opposite the name of Highland and 158 opposite that of Neal (making 351) and yet the footing of the tallies for Highland are carried out as 188, being five less than actually and certainly appear.

The number of lines shown being taken to be the number of votes cast for Highland would give him a majority of three, while the number as carried out, which is also the number certified by the judges, would give Neal a majority of two.

Patton v. The People.

Appellants having adopted these lines as showing the number of votes cast in the second ward for Highland and declared the result accordingly, the relator filed the petition herein for mandamus commanding them "forthwith to examine and canvass the returns of said election for mayor, and, as a part of such canvass, to include therein the returns from said second ward as certified by said judges and clerks of election, showing 188 votes cast for William R. Highland, and 158 votes cast for your petitioner." Several pleas were filed and issues joined, but all of the facts in the case and all the evidence are above sufficiently set forth; upon which the court, refusing all the instructions asked on behalf of appellants, directed the jury to find the issues for the plaintiff, and upon such finding, overruled a motion to set it aside, and rendered judgment awarding the writ of mandamus as prayed for and for costs. To these rulings and this judgment, exceptions were duly taken, and this appeal was prayed and allowed.

The petition, verified by affidavit of the relator, alleged, among other things, that he was present with his counsel at the meeting of appellants held to canvass the returns, and then and there insisted that they should canvass the returns from the second ward as certified to, and declare the result accordingly; which allegation was not in any way denied. Besides the city clerk, who identified all the records offered in evidence, the only witness examined or offered on either side was the petitioner, who testified only to facts showing his eligibility to the office for which he was a candidate at the election in question.

In their proceedings in the premises the city council were not acting as judges of the election or qualification of their own members, but as canvassers of the returns of the election of incoming city officers, in pursuance of the duty imposed by Sec. 10, Art. 4, Ch. 24 of R. S. (Hurd's Ed. of 1893, p. 254), which was to "examine and canvass the returns, and declare the result of the election, and cause a statement thereof to be entered upon its journals."

The duty thus imposed is purely ministerial. The Peo-

ple ex rel. v. Head, 25 Ill. 325; Same v. Hilliard, 29 Id. 420. They determine nothing judicially. Their duty, and their whole duty, is prescribed by the statute, and that they are to do. It is "a mere mechanical, or, rather, mathematical duty. They may probably judge whether the returns are in due form, but after that they can only compute the votes cast for the several candidates and declare the result," said the court in the Head case. And in The People ex rel. v. Nordheim, 99 Ill. 561, it was said that "the canvassing board, from the very nature of the transaction, must in every case determine for itself whether the papers transmitted to it are, within the meaning of the law, returns of an election. The canvassers must be satisfied that they are genuine, and that they purport on their face to give the result of the election." The board determines these questions "for itself," that is, ministerially; not judicially, that is, for the parties in interest. This sort of judgment is not judicial or discretionary. Nor is it peculiar to these ministerial officers. The unavoidable necessity for such judgment arises in the performance of almost every duty, which is, nevertheless, regarded as purely ministerial. The sheriff's duty, imposed by his writ, is to serve it upon A B, or levy upon his property. There may be a question about his identity or that of the property upon which the officer levies. He must decide it, but if he mistakes the fact, or the law which determines the fact, however honestly, he fails to perform the act required of him; and so in almost every such case. These election returns come from different officers in different election districts. Some one body must be appointed to canvass them all and declare the result of the whole. Very doubtful and difficult questions may arise in the attempt to ascertain whether they are in proper form or just what they purport to give as the result of the election. But however difficult, it is a part of the ministerial duty of the canvassing board to solve them for itself. But they must solve them correctly, both as to the fact and the law, or they do not perform the ministerial act which the law commands, and their action may be controlled by mandamus.

Here the doubt is, which is correct as to the number of votes cast for Highland in the second ward—that shown by the tally list or that shown by the certificate of the judges? These differ. Both can not be correct. Neither tends to explain the other or to show how the difference occurred. Neither is, in itself, at all uncertain. The carrying out or footing of the tally list does not make it uncertain, as it appears of itself, but is itself plainly an error. The record shows 193 lines, in squares of five each, excepting the last, which contains only three. They may have been counted by squares; and these appearing alike and being consecutively adjacent, one may have been inadvertently overlooked; or, possibly, one may have been filled by mistake or fraud, after the count was correctly made and the footing set down. But how this was is matter of mere surmise. There is neither proof nor presumption as to how the difference between the tally list and the judge's certificate occurred. Having occurred and plainly appearing, the canvassing board was to determine ministerially which should be accepted as correct. It is to be regretted that they did not call in the judges and afford them an opportunity for explanations and correction, if they were prepared to make them, before the result was declared, as was suggested in some of the cases cited.

Which, then, if either, is the better evidence of the number of votes cast for Highland?

The writer is inclined to the opinion that the law, in case of irreconcilable difference between the certificate of the judges and either or both of the other "constituents" of the returns, must intend which is to govern the canvassing board. Otherwise it must give them some judicial power of determination, which is not claimed; or if claimed, is not warranted by the decision of the Supreme Court already referred to. He holds that in such cases the judges' certificate controls. That is what authenticates the other constituents, and they do not authenticate it; that where it is in proper form and without any uncertainty on its face, as it here appears, he apprehends it must control, though where

it is informal or its import is uncertain, it may be aided or explained by either or both of the others, which are inferior in character, and of force for that purpose only.

A majority of the court, however, are unwilling to go so far; they deny to either constituent a controlling force, holding that all are to be considered and the result to be found from a consideration of all, which alike and together constitute the returns to be canvassed. They agree that in this case the poll books contradict the tally list and aid the certificate. If there were only 347 votes, as the poll books show, there could not have been 351 votes legally cast, as shown by the tally list, but there might have been 346, as shown by the footing and judges' certificate. The tally list, therefore, was probably incorrect, and consequently also the declaration of the result of the election based upon it.

Then the returns in this case have not been canvassed and the result declared, as intended by the statute, according to either view of it, and mandamus is the appropriate remedy. Ruyle v. The People, 91 Ill. 525, and cases cited, *supra*.

The judgment of the Circuit Court will therefore be affirmed.