CHARLES J. HUNT v. LOUIS C. HOFFMAN and Others.[1]

March 30, 1914.

No. 18,763.[2]

**Canvass of election returns — correction of mistake.**

1. A proceeding may be maintained under G. S. 1913, § 357, to compel a city canvassing board to correct a palpable mistake of fact or of law in canvassing returns. Such mistake was made in this case in excluding proper returns from their consideration. The city clerk of St. Paul should require all returns to be sealed before he receives them and he should keep them under seal, but the canvassing board cannot wholly reject such returns because presented to them unsealed, if they are fair, complete and plain on their face and free from suspicion of tampering and where the duplicate returns filed with the county auditor are ambiguous and contradictory.

**Original jurisdiction of supreme court — remedial cases.**

2. That portion of G. S. 1913, § 357, which confers original jurisdiction

[1] Reported in 146 N. W. 733.        [2] Special term of court.

upon the supreme court in such a case is not unconstitutional. The relief asked in this case is not broader than the relief granted in mandamus proceedings, for mandamus will lie to compel a canvassing board to issue a certificate of election to the party entitled to it on the face of the returns, though the board has decided in favor of another. This proceeding is one of the "remedial cases" in which original jurisdiction may be conferred upon this court.

**Collateral attack.**

3. The rule which forbids collateral attack of the determination of a judicial or quasi-judicial tribunal has no application to this case.

**No other remedy.**

4. Plaintiff has no other adequate remedy.

**Relief after adjournment of canvassing board.**

5. The fact that the common council has completed its canvass and, as a canvassing board, has adjourned, does not defeat plaintiff's right to relief under this statute.

Upon the affidavit of Charles J. Hunt, this court granted its order directing Louis C. Hoffman, as city clerk of the city of St. Paul, and the several members of the common council of that city, acting in their capacity as a canvassing board, to canvass the returns of a primary election held in that city on March 17, 1914, to correct their return and abstract of votes cast for city officers so as to show that Charles J. Hunt received 150 votes for councilman in the Second precinct of the Tenth ward, and a total of 4,107 votes for said office at that election, that Charles J. Hunt, and not J. D. Hyland, was one of the nominees for such office at the ensuing city election and entitled to have his name printed as such candidate for councilman on the official ballots at that election, or show cause why they had not done so. J. D. Hyland made return and objected to the proceeding on the grounds: (a) That it was a collateral attack on his nomination; (b) that it was in effect a contest against his nomination, and this court had no original jurisdiction in the matter; (c) that affiant had another and adequate remedy at law by instituting a contest; (d) that the canvassing board had adjoined *sine die* and could not be required to re-assemble or perform any other acts.

Oscar E. Keller and eight other respondents filed a return admit-

ting that all the affiant's allegations in the proceeding were true, and praying that he be awarded the relief asked.

*Daniel W. Doty,* for Charles J. Hunt.

*John J. Kirby* and *J. C. Michael,* for respondent Hyland.

*Thomas W. Kane,* for respondents Keller and others.

HALLAM, J.

This proceeding is brought under section 357, G. S. 1913, to correct an error or omission of the city council of St. Paul, acting as a canvassing board, in declaring defendant Hyland nominated for councilman over the plaintiff Hunt at the city primary election.

The statute provides that the election officers in each voting precinct shall make duplicate returns showing the total number of votes received by each candidate, one duplicate to be delivered, together with the ballot boxes, and unused and spoiled ballots, to the city clerk, the other duplicate to be delivered to the county auditor. G. S. 1913, §§ 503, 505. The officers' tally sheets on which the count has been entered are to be included in the returns of such election. G. S. 1913, § 351. Under the city charter the city council acts as a canvassing board to canvass all returns and declare the result. City Charter 1912, c. 2, § 9. The statute is not explicit as to which set of returns the board shall canvass, whether the clerk's or auditor's duplicates. In this case the board did in fact proceed to canvass the clerk's duplicates and resorted to the auditor's duplicates only in case of doubt arising from the clerk's returns. Since the election was a city election, this was a proper and orderly method of procedure.

The returns delivered to the city clerk from the Second precinct of the Tenth ward gave plaintiff Hunt "one hundred and fifty (150)" votes. The officer's tally sheet for this precinct was made part of the return, and this showed a tally of 150 votes for Hunt. In the duplicate return delivered to the county auditor, however, the vote of Hunt appeared as "fifty (150)." If Hunt received 150 votes in this precinct he was nominated. If but 50, then Hyland was nominated. The canvassing board counted only 50 votes for Hunt in this precinct. Hunt contends that the board in so doing made a palpable

mistake of fact or law which the court may correct. We sustain this contention.

If we take the returns filed with the city clerk, either with or without the tally sheet, Hunt's title to 150 votes in this precinct is clear. If we take this return, either with or without the tally sheet, in conjunction with the return delivered to the county auditor, we think his title to 150 votes is sufficiently clear. Taking the two duplicate returns together, there is no room for doubt that the word "fifty" in the auditor's return is a clerical error and that the numeral "150," which corresponds with the clerk's return, is correct. It is only by taking the auditor's return alone that any real doubt is injected into the case. If this return alone is taken, it would be possible to reach the conclusion that Hunt received only 50 votes, by the aid of the presumption that written numbers prevail over numerals.

We are of the opinion that the canvassing board made a plain mistake in counting for Hunt only 50 votes in this precinct. If the board considered the clerk's return alone, or the clerk's and auditor's returns together, then they made a palpable mistake of fact. If they rejected the clerk's return and considered only the auditor's return, then they made a mistake of law. We infer from the argument that the board did reject the clerk's return and that they did so for the reason that it came to them unsealed. We are of the opinion that they had no right to do so, there being no charge of fraud, or that the returns on file with the city clerk had been tampered with.

Of course the clerk should require all returns to be sealed before he receives them. The statute imposes this duty. G. S. 1913, § 511. It is undoubtedly his duty to keep the returns under seal. But we do not think that the right of the candidates and of the public to have these returns canvassed should be set at naught by the mere act or omission of a derelict city clerk, and in the absence of any statute requiring us to do so, we shall not so hold. It does not appear that the clerk's duplicate return was unsealed when delivered to him. Plaintiff claims that it was not. Those returns present no appearance of having been tampered with and there is no suggestion that they have been. The claim is that they must be arbitrarily rejected because not sealed when presented to the canvassing board. We would

not say that it is improper in such a case as this to invoke the auditor's return for purposes of verification, but we cannot hold that the clerk's duplicate, fair, complete and plain on its face, and not in fact subject to suspicion, should be wholly rejected and the result of the election determined from the auditor's duplicate alone, when the auditor's duplicate is so ambiguous and contradictory that a result cannot with certainty be determined from it. We hold that the canvassing board mistook their legal duty when they rejected the clerk's return and resorted to the auditor's duplicate alone.

The statute provides that when "an error or omission has occurred or is about to occur in the placing of any name on an official primary election ballot * * * or that any wrongful act has been or is about to be done by any * * * canvassing board * * * or that any neglect of duty has occurred or is about to occur," this court may "order the officer or person charged with such error, wrong or neglect to forthwith correct the error, desist from the wrongful act, or perform the duty." G. S. 1913, § 357. The plaintiff is entitled to the relief asked, and the language of this statute is broad enough to authorize this court to grant it in this proceeding.

2. It is contended that if this statute is so construed, it confers jurisdiction upon this court not warranted by the state Constitution. We cannot so hold.

Section 2, article 6, of the Constitution provides that the supreme court "shall have original jurisdiction in such remedial cases as may be prescribed by law." This court has held that the term "remedial cases," as here used, has but a limited signification; that the "remedial cases" of which the legislature may give this court original jurisdiction are only those special or extraordinary proceedings where the remedy is afforded summarily through certain "original remedial writs," such as mandamus, certiorari, quo warranto, prohibition, habeas corpus, and the like. State v. St. Paul & S. C. R. Co. 35 Minn. 222, 28 N. W. 245; State v. Minn. Thresher Mnfg. Co. 40 Minn. 213, 41 N. W. 1020, 3 L.R.A. 510; Lauritsen v. Seward, 99 Minn. 313, 109 N. W. 404. We are of the opinion that this proceeding is one of the "remedial cases" in which original jurisdiction may be conferred upon this court. The proceeding authorized by the statute

quoted is not designated mandamus nor by any other name. But we are not particular about names. This is not an election contest. It is a proceeding to enforce a plain right. Jurisdiction to grant the relief asked for here might have been conferred by a statute giving this court original jurisdiction in mandamus proceedings. Mandamus lies against a public officer to compel the performance of an act which the law enjoins as a duty of his office. State v. Ames, 31 Minn. 440, 18 N. W. 277; State v. Holgate, 107 Minn. 71, 119 N. W. 792. More than 50 years ago it was held by this court that mandamus will lie to compel a canvassing board to issue a certificate of election to the party entitled to it on the face of the returns, although the board has, by rejecting certain returns as fraudulent, determined that the opposing candidate has a majority, and a certificate has been issued accordingly. Emmet, C. J., said that the duty of these officers "in canvassing and estimating the votes" is "purely ministerial, and that no judicial or discretionary powers are conferred upon   *   *   * the board of canvassers, except perhaps so far as to determine whether the returns are spurious or genuine, or polled at established precincts, and in ascertaining from the returns themselves, for whom the votes were intended." [1]

This is in accordance with the weight of authority and we follow it as the law applicable here. 15 Cyc. 379, 380; 26 Cyc. 275, et seq.; People v. Ruyle, 91 Ill. 525; Patton v. People, 63 Ill. App. 617; State v. McFadden, 46 Neb. 668, 65 N. W. 800.

State v. Churchill, 15 Minn. 369 (455), cited by counsel for defendant Hyland, is not inconsistent with this decision. There it was sought by mandamus to command the auditor to issue a certificate of election to the relator. The canvassing board had canvassed all returns and counted all votes cast, and it was claimed they had erroneously counted for the prevailing candidate ballots which did not sufficiently describe his name. The court denied the writ. Under the rule of O'Ferrall v. Colby, infra, the decision of the canvassing board upon the matters there involved is final.

3. These considerations also dispose of the objection that this pro-

[1] O'Ferrall v. Colby, 2 Minn. 155 (187).

ceeding will not lie because it is a collateral attack upon the decision of the canvassing board.

The rule which forbids collateral attack upon the determination of judicial or quasi-judicial tribunals has no application here. No such objection can be urged against a legal proceeding to require public officers to perform a ministerial duty, where they have acted erroneously under a mistake of fact or of law. See O'Ferrall v. Colby, 2 Minn. 148 (180).

It is contended plaintiff has another adequate remedy by contesting the election, and that relief under this statute should be denied. It is not necessary to determine what might be the effect of the existence of another adequate remedy, for none exists. A right to a lawsuit to try title to a nomination does not afford an adequate remedy to one who is entitled to a certificate of nomination on the face of the returns.

5. It is contended that, since the common council, acting as a canvassing board, has adjourned, the canvassing board is not longer in existence, and that no order can be made which will be operative. It is plain that so simple a process as adjournment by a canvassing board cannot defeat the purpose of this statute. State v. McFadden, 46 Neb. 668.

It is accordingly ordered that the city council of the city of St. Paul, acting as the canvassing board to canvass the primary election returns of votes cast at the primary election held in said city on March 17, 1914, reconvene and correct their return and abstract of votes cast for councilman, so that the same shall declare that the plaintiff Charles J. Hunt received 150 votes in the Second election district of the Tenth ward, and a total of 4,107 votes for said office at the said primary election, and that said Hunt is one of the nominees for said office and that the defendant John D. Hyland is not, and that in default of such action by said canvassing board, within five days from date hereof, the city clerk of said city shall in any event give notice to said Hunt of his nomination, and the name of said Hunt shall in any event be printed as such candidate on the official ballots at the general city election to be held in said city on May 5, 1914, subject, however, to the right of any proper person to contest the

right of said Hunt to said nomination in the manner provided by law.