264 Minn. 257 (1962)
119 N.W. (2d) 1
IN RE APPLICATION OF ELMER L. ANDERSEN UNDER MINN. ST. 203.38.
IN RE APPLICATION OF KARL F. ROLVAAG
v.
JOSEPH L. DONOVAN AND ANOTHER.
Nos. 38,945, 38,946.
Supreme Court of Minnesota.
December 11, 1962.
*258 Richard E. Kyle and J. Neil Morton, for Elmer L. Andersen.
Sydney C. Berde and Fine, Simon & Schneider, for Karl F. Rolvaag.
KNUTSON, CHIEF JUSTICE.
At the November 6, 1962, general election, the two major candidates for the office of governor were Elmer L. Andersen on the Republican ticket and Karl F. Rolvaag on the Democratic Farmer-Labor ticket. In the original tabulation of votes by the county canvassing boards throughout the state, Rolvaag led by a margin of 58 votes, the totals being 619,704 for Karl F. Rolvaag and 619,646 for Elmer L. Andersen. After the votes had been certified to the secretary of state, as required by Minn. St. 204.29, subd. 4, the county canvassing boards in ten counties, believing that there had been obvious errors, reconvened and retabulated the results of the election in certain precincts in those counties. In doing so they relied on Minn. St. 204.30. The counties so affected were Blue Earth, Douglas, Grant, Koochiching, Le Sueur, Morrison, Otter Tail, Stearns, Stevens, and Watonwan. Each of the county canvassing boards thereafter certified the results of such recanvasses to the secretary of state. The final result of the tabulations according to the recanvasses showed that Elmer L. Andersen had received 619,722 votes and Karl F. Rolvaag, 619,580, or that Elmer L. Andersen led by a plurality of 142 votes.
The state canvassing board met pursuant to § 204.31 on November 20, 1962, to canvass the votes of the candidates for state offices. Being unable to agree whether to accept the original returns certified to the secretary of state by the various canvassing boards or the amended returns, they adjourned from time to time until November 26, at which time it appeared that they were unable to agree among themselves as to which set of votes to accept.
Thereafter a petition was submitted to this court under § 203.38 in behalf of Andersen, seeking to compel the state canvassing board to accept the amended returns as part of their tabulations. Two petitions were submitted at the same time in behalf of Rolvaag, one of which seeks to compel the state canvassing board to accept the corrected votes from one county, namely, Stearns. The other seeks to compel the state canvassing board to reject the amended returns from *259 eight counties. All three petitions came on for hearing before this court on November 28, and were heard together. Basically, the same question is involved in all. Two members of the court, having served on the canvassing board, were disqualified from sitting at the hearing on these petitions. In view of the fact that it was imperative that the state canvassing board complete its work without undue delay and without awaiting a formal opinion of this court, an order was made and filed reading:
"IT IS HEREBY ORDERED, That the state canvassing board reassemble forthwith, or at the earliest possible date, and complete its canvass of the votes for Governor; that in so doing it accept and count the votes from the Counties of Blue Earth, Douglas, Grant, Koochiching, LeSueur, Morrison, Otter Tail, Stearns, Stevens, and Watonwan as amended by the county canvassing boards. A formal opinion of this court will be prepared and filed in due course of time."
The errors alleged to have been corrected consist of a variety of things in the different counties. In Stearns County, the total vote cast for the office of governor in the township of Paynesville appeared to be 363, whereas the number of registered voters amounted to 279. The vote for governor was 89 for Karl F. Rolvaag and 274 for Elmer L. Andersen as returned by the township of Paynesville. The county board, finding this was an error, corrected it so that Karl F. Rolvaag received 89 votes and Elmer L. Andersen, 174. The resolution submitted to the secretary of state does not indicate what caused the error.
In Blue Earth County, it appeared that the third candidate for governor received 23 votes in the township of Mankato, whereas he did not receive more than 7 votes in any other precinct in the county, with 19 voting precincts giving him no votes and 16 precincts giving him one vote. Upon observing the large vote in Mankato township, the county canvassing board concluded that there must have been an error in tabulating his votes. The ballots were inspected, and it was found that the third candidate actually received only 4 votes. The result of the original canvass was that Rolvaag received 233 votes and Andersen, 266. The result of the final tally was that Rolvaag received *260 233 votes and Andersen 288 votes in the township of Mankato.
In one ward in Douglas County there were 918 voters registered. According to the report of the canvassing board the total number of votes cast for governor was 959. The county canvassing board concluded that there was an obvious error in the fifth ward of the city of Alexandria. It also appeared to the county board that there was an error in Alexandria township in that there was a wide discrepancy between the votes for governor and the pattern of voting in the township as to other candidates. The ballots were examined, and it was found that there actually was an error in the tally in both cases.
In Grant County, 31 absentee ballots were delivered into the hands of the election judges personally instead of being placed in the United States mail. Originally they were not counted. The county board, upon reconvening, considered the return of the ballots proper and counted them. Of the 31 ballots, Rolvaag received 11 votes and Andersen, 20.
In Koochiching County, the resolution does not show what the error consisted of. It simply shows that corrections were made in the tabulation of one ward of the city of International Falls so that Rolvaag gained one vote and Andersen gained three.
In a precinct in Le Sueur County, there were 523 votes cast. The original tabulations showed the combined vote for state auditor was 564 votes, and the total vote for governor was 472. It appeared to the county board that in view of this discrepancy there was an obvious error. The ballots for the first precinct of the first ward of the village of Le Center were thereupon examined, and it was found that there actually was an error existing.
The error in Morrison County consisted of a transposition of figures in the village of Pierz. In the original tabulation Andersen was given 171 votes and Rolvaag, 212. By affidavits of two of the election judges, it was called to the attention of the county board that this was a transposition of the totals for the two candidates. Upon an examination of the ballots it was found that Andersen was entitled to 211 votes and Rolvaag, 174.
The report from Otter Tail County does not show what the error *261 consisted of. It involved a tabulation of the vote in the village of Bluffton. In the retabulation, Rolvaag gained a few votes.
In Watonwan County, it appeared that in one precinct in the city of St. James the vote tabulated for the Democratic candidate for governor was greater in proportion to that for other candidates of that party than in other precincts. This led the county board to believe that there was an error in the tabulation of votes in that precinct. An examination of the ballots confirmed the error.
In Stevens County, it was brought to the attention of the county canvassing board that the canvass of the vote in Pepperton township showed Elmer L. Andersen receiving 31 votes, Karl F. Rolvaag, 86, and the third candidate, 3, being a total of 120 votes, whereas the total number of voters who cast their ballots in this township was 103. It therefore appeared that there was an error. The ballots were examined, and it was found that the vote actually cast was 31 for Andersen and 68 for Rolvaag. It is apparent that the figure 86 had been recorded instead of 68 due to a transposition.
While these errors involve a variety of things, they are all of a nature that could reasonably be said to be obvious errors. The term "obvious error" as used in our statute is one that defies exact definition. About the only definition that can be given to it is that some error appears evident from an examination of the returns made by the various precincts. The errors shown here are all of a kind that could have been corrected by each county canvassing board when it made its initial canvass. Since this was not done, the question arises: Could the correction be made after the county canvassing board had completed its original canvass?
Minn. St. 204.29, subd. 4, which provides for the original report by the county canvassing board to the secretary of state in elections involving state offices, reads:
"Two copies of each of the statements required in this section shall be made and certified under the official seal of the auditor; each enclosed in an envelope directed to the secretary of state, with the auditor's name and official address and the words, `Election Returns,' endorsed thereon, and forwarded by different mails within five days *262 of each other. If neither copy is received by the secretary of state within 20 days after the election, he shall immediately notify the auditor of that fact, and the auditor shall transmit another copy thereof to the secretary by special messenger deputed by him."
Thereafter, § 204.30, subd. 1, reads as follows:
"If in conducting the canvass of votes at any election as provided by law, any county canvassing board determines by a four-fifths' vote that an obvious error in the counting and recording of the vote for any particular office has been made by the judges in any precincts, then the county canvassing board shall refuse to count the returns of that precinct for that office, and they shall order an inspection of the ballots and the returns of the precinct for the purpose of correcting the obvious error, which error shall be specified by written resolution of the board."
Subd. 6 of the same section reads:
"The canvassing board shall make its declaration of election with reference to the office in question. The report and declaration of election shall be filed by the auditor, and he shall mail a certified copy thereof to each candidate. The auditor immediately shall notify the secretary of state by registered or certified mail of the action of the county canvassing board."
Section 204.30 came into our election laws in 1955. L. 1955, c. 171. It has no counterpart in preceding laws. Its purpose obviously was to permit correction at the county level[1] of obvious errors committed by the precinct judges in order to avoid the necessity of an election contest where possible. Unfortunately, the statute fails to specify when such action may be taken. A literal reading of the statute would justify the conclusion that in elections involving state offices *263 the corrective action must be taken before the county board certifies its result to the secretary of state. Petitioner Andersen urges us to adopt a construction of the statute, in the light of the apparent purpose behind it, permitting a county canvassing board, upon discovery of obvious errors, to reconvene and correct those errors at any time, at least until the state canvassing board meets. In any construction, there should be a cutoff at that point, although the statute is silent on that also. That there is difficulty in the proper construction of these statutory provisions is evident from the fact that the state canvassing board  composed of two district judges, two members of this court, and the secretary of state, four of whom are learned in the law  has been unable to agree upon their proper application. We do not fully agree with the contentions of either party.
This statute is comparatively new and there has been no decision construing it heretofore. It is not difficult to understand that lay people in charge of elections might construe this statute in a manner not acceptable to us. In the counties where ballots were examined in this proceeding, there was substantial compliance with this requirement. Notice was sent to the opposing candidates or to representatives of the party on whose ticket they appeared. In many cases, representatives were present when the recount was made. In other cases, the candidates or their representatives had an opportunity to be present. Under these circumstances, it appears that a reasonable respect for the certification of the true result of the election requires that the final result, which is the true result, be accepted as the vote actually cast.
For the first time provision was made whereby the county canvassing board could, if necessary, inspect the ballots in order to correct obvious errors. However, a number of safeguards were established before this could be done in order to prevent any tampering with the ballots.
In the first place, it is necessary for four out of the five members of the county canvassing board to agree that an obvious error does exist. Thereafter, § 204.30, subds. 2 and 3, provide:
"Subd. 2. The inspection shall be made by the canvassing board *264 in the presence of all the candidates for the office or their representatives.
"Subd. 3. The inspection shall be conducted as soon as practicable at the office of the county auditor, and the auditor shall set the time of meeting, and give notice to the candidates a sufficient time before the meeting."
Under § 204.30, subd. 6, the county auditor must serve copies of the report and declaration of election made by the county canvassing board upon each candidate and mail to the secretary of state a report of the action of the county canvassing board.
While the title to the act is not controlling, it does shed some light on what the legislature intended by the enactment of this statutory provision. The title to L. 1955, c. 171, now Minn. St. 204.30, reads:
"An act relating to elections, providing for a recount of the ballots cast thereat, authorizing any county canvassing board to require election officials of any precinct to recount the ballots cast and to make a new return thereof under certain conditions." (Italics supplied.)
This title is somewhat inconsistent with the body of the act itself in that the title indicates that the recount should be made by the precinct that made the mistake, whereas the body of the act indicates that the recount should be made by the county canvassing board. However, it seems quite clear that what the legislature had in mind was to permit a correction of errors at the time the canvass was being made.
Petitioner Rolvaag asserts that the county canvassing board, having met, completed its canvass, and adjourned, is functus officio. For this he relies largely on Clark v. Buchanan, 2 Minn. 298 (346). It is true that in that case we did say (2 Minn. 300 [347]):
"* * * It being admitted therefore, that the board [county canvassing board] adjourned sine die, at the time alleged in the answer, did it then become dissolved and functus officio? We think it did. * * * But if the board of canvassers do not perform the duties required of them by section 33, within the time therein specified, there is no provision of statute by which they are permitted to do it at a subsequent time. *265 * * * The whole scope and object of the statute upon the subject manifestly contemplates the entire completion of the duties of the board of canvassers, not later than the twentieth day after the close of any election. And to permit or require them to do any act after that time, as such board, would be wholly unauthorized by law.
"The board is then functus officio, and this court cannot now revive its powers or exercise legal control over it."
However, the facts, as well as the law, under which that case was decided are entirely different from those now confronting us. In the first place, the court did not hold that the board could not convene within the 20 days then authorized for it to perform its function but held that after the expiration of that time it was functus officio. We then had no statute similar to § 204.30. Neither did we have a statute similar to § 203.38. If we were to adhere to what we said in Clark v. Buchanan, supra, it would be impossible even to compel performance by the county canvassing board of an act left unperformed by order of the court under § 203.38, which as far as material here reads:
"When it shall appear by affidavit to any judge of the supreme court in the case of a state election, or of the district court of the proper county in the case of a county election;

* * * * *
"(d) that any wrongful act or neglect by any election judge, county auditor, canvassing board or member thereof, secretary of state, or other person charged with any duty concerning an election, has been or is about to be done, then the judge immediately shall order the officer, person, or board charged with the error, wrong, neglect, or failure to correct the same or perform the duty forthwith or show why he should not do so."
If the board is functus officio after having completed its original canvass, and if Clark v. Buchanan, supra, were to be followed literally, it would mean that this statute would be ineffective in that the court could not revive the county canvassing board in order to compel it to do any act which it had neglected to do. Even petitioner Rolvaag admits that the county canvassing board can be compelled to act under *266 this statute. If that be true, the board can hardly be functus officio. That is exactly what we have held in Hunt v. Hoffman, 125 Minn. 249, 146 N.W. 733. That was a proceeding brought under G.S. 1913, § 357, the forerunner of our present Minn. St. 203.38. One of the arguments there made was that since the common council, acting as a canvassing board, had adjourned the canvassing board was no longer in existence and no order could be made which would be operative to compel it to correct any errors. With respect to this argument we said (125 Minn. 255, 146 N.W. 735):
"* * * It is plain that so simple a process as adjournment by a canvassing board cannot defeat the purpose of this statute."
Haroldson v. Norman, 146 Minn. 426, 178 N.W. 1003, was a proceeding also brought under G.S. 1913, § 357, to compel the county auditor, the secretary of state, and the county and state canvassing boards to correct an error with respect to the certification of the vote of the petitioner. The trial court ordered the county canvassing board to reconvene and recanvass the returns made to the auditor and to correct the report made to the secretary of state and further ordered that the state canvassing board reconvene and recanvass the correct returns of the county canvassing board and that the secretary of state make his certificate based thereon. We held that the trial court was right in so doing. We said (146 Minn. 427, 178 N.W. 1004):
"The fact that the canvassing board had adjourned does not defeat the purpose of this statute. This was determined in Hunt v. Hoffman, supra [125 Minn. 249, 146 N.W. 733]. In that case the canvassing board was ordered to reconvene to correct their error. The decision in Clark v. Buchanan, 2 Minn. 298 (346), holding that mandamus would not lie against a canvassing board after it had adjourned, seems not to have been called to the attention of the court when Hunt v. Hoffman was being considered. Clark v. Buchanan is contrary to the weight of authority, * * * but if it can be said to state a proper rule in a mandamus case, it does not follow that the same rule should apply in a proceeding under our statute. It is our opinion, as held in Hunt v. Hoffman, that, under section 357, the court has the power to *267 compel a canvassing board to reconvene after adjournment for the purpose of correcting errors such as that section mentioned. * * *
"It is urged that, under section 357, an order of court can only be directed against an official or body guilty of some error or violation of duty, and that no order can be directed against the state canvassing board and secretary of state to correct the error of the county canvassing board. We are of the opinion that the statute should be so construed as to permit the correction of error apparent on the face of the returns, and, to make the corrections effectual, to direct officials and bodies who have innocently acted on the error, to correct their subsequent proceedings to conform to the facts. Any other construction would make it impossible for the court to correct the error in such a case as this, and yet the statute empowers the court to do so."
It must follow that the rule of Clark v. Buchanan, supra, is no longer the law. If the legislature could provide that the canvassing board could be compelled to correct an error after it once adjourns, it could likewise provide that the board itself could reconvene to correct errors on its own initiative once they were discovered. It may be that § 204.30 does not go that far, but it is clear that what was done here by the county canvassing boards could in each instance have been ordered by the court under § 203.38.
Procedural statutes governing elections are intended to safeguard the right of the people to express their preference in a free election by secret ballot and to have the results of the election governed by the votes so cast. Elections are conducted, for the most part, by people in our communities who are unfamiliar with the niceties of legal verbiage. As long as there is substantial compliance with our laws and no showing of fraud or bad faith, the true result of an election, once ascertained, ought not be defeated by an innocent failure to comply strictly with the statute. For that reason we have frequently held, in a variety of situations, that, after a fair election is held and the results ascertained, mere irregularities in following statutory procedure will often be overlooked.[2] In In re Order of Sammons, County Superintendent *268 of Schools, 242 Minn. 345, 349, 65 N.W. (2d) 198, 201, involving a school election, we stated this rule as follows:
"* * * The question of the validity or invalidity of a school consolidation is not solved, however, merely by finding that the statutory violations were unjustifiable since the purpose of the litigation is not to punish a few local administrative officials for their negligent administrative acts but to determine, after an election has once been held, whether their failure to perform prescribed ministerial duties has enabled disqualified voters to vote; has deprived legal electors of their vote; or has deprived voters of the adequate notice and information reasonably necessary to enable them to vote with a deliberate appraisal of the merits, whereby the results of the election are made uncertain or inaccurate as a free and fair expression of the popular will.
"It makes little difference whether an election is determinative of a school consolidation or of the right to hold a public office since the fundamental principles governing the integrity of the ballot are substantially the same.
"It is the general rule that, before an election is held, statutory provisions regulating the conduct of the election will usually be treated as mandatory and their observance may be insisted upon and enforced. After an election has been held, the statutory regulations are generally construed as directory and such rule of construction is in accord with the policy of this state, which from its beginning has been that, in the absence of fraud or bad faith or constitutional violation, an election which has resulted in a fair and free expression of the will of the legal voters upon the merits will not be invalidated because of a departure from the statutory regulations governing the conduct of the election *269 except in those cases where the legislature has clearly and unequivocally expressed an intent that a specific statutory provision is an essential jurisdictional prerequisite and that a departure therefrom shall have the drastic consequence of invalidity. * * *

* * * * *
"In implicit recognition of the above principles this court has uniformly refused to hold school district consolidation proceedings invalid for irregularities where the determinative election, despite such irregularities, resulted in a free and fair expression of the will of the voters on the merits."
In State ex rel. Maffett v. Turnbull, 212 Minn. 382, 386, 3 N.W. (2d) 674, 676, while we held that no election was in fact held due to the failure of the election officials to give the notice of election required by law, we recognized the general rule and there said:
"A democracy articulates through elections. Our comprehensive election laws are designed to enable the voters to express their will at the polls. * * *
"It is expression of the will of the voters that the law seeks."
The same rule ought to apply here. As far as it appears from anything before us, it must be conceded that the amended returns from the ten counties involved reflect the true vote of the people. To now hold that the results of this election must be based on the return that everyone concedes is erroneous would be a perversion of our whole election process in the pursuit of strict adherence to statutes that need not be so strictly construed. We need not decide whether the procedure followed was strictly within the statutes. It may be that, if the party who now complains of accepting the true vote (except where it benefits him) had proceeded promptly to stop any recanvass on the ground that it could not be done under § 204.30 after the county canvassing board had adjourned, he could have prevailed. It is obvious that the candidate who now seeks to exclude the correct tally of the vote was content to permit correction of errors by the county canvassing boards where it benefited him. He should not now be heard to complain where the correction adversely affects him.
*270 One basic idea runs through our decisions involving the validity of elections; that is, that once the result of an election is ascertained, it should be upheld if there is a way to do so, absent fraud, bad faith, or a jurisdictional defect in the proceeding of such magnitude that a free expression of the will of the people is absent.
While counsel for Rolvaag seeks to draw a distinction between the actions of the county canvassing boards in Stearns County, and apparently in Otter Tail County, where the results were favorable to him, and the other counties involved where the results were adverse to him, we fail to see any distinction. The basic question as to all ten counties is whether the county canvassing board, having met and canvassed the votes and certified the result to the secretary of state, may thereafter reconvene for the purpose of correcting obvious errors and then certify the corrected canvass to the secretary of state.[3] *271 It seems to us that the position of Rolvaag in these two petitions is completely inconsistent. Either the county canvassing board was functus officio after completing its original canvass in all cases or in none. Either the amended returns should be accepted from all counties or they should not be accepted from any.
Inasmuch as the corrections could have been made before completion of the original canvass, and in view of the fact that the county board under our later decisions cannot be held to be functus officio after it has adjourned but could be compelled to correct the errors by proceedings under § 203.38, it seems to us that we should apply the rule that, once the true vote of the people is ascertained, mere irregularities will be overlooked. The correct results have been reached, and failure to follow the statute precisely is only an irregularity which should not prevent the true winner from prevailing.
It would have been better if the parties interested had proceeded under § 203.38, but, keeping in mind that the object of all elections ought to be to declare elected the candidate who receives the most legal votes, it should follow that the method of arriving at the correct result, after it is in fact accomplished, should not be permitted to control so as to declare the loser to have won the election. To do so would be to permit the outcome of an election to rest on admitted mistake rather than on known fact.
The rationale of our decisions has been incorporated into our election code since 1893. Minn. St. 204.28, subd. 2, reads:
"An officer to whom election returns are required to be made may not refuse to receive them because they are returned or delivered to him in any manner other than that prescribed by law, except that the returns must be sealed. A canvassing board may not refuse to include any returns in its canvass of votes on account of any informality in holding the election or making returns thereof. All returns shall be received and the votes canvassed by the canvassing board and included *272 in its statements where there is a substantial compliance with the provisions of the Minnesota election law."
This statutory provision has its ancestry in L. 1893, c. 4, §§ 161, 162, and 163. Even before the enactment of that statute, we recognized the fact that irregularities do occur and should be overlooked if they do not affect the true result of the election. In Taylor v. Taylor, 10 Minn. 81 at 84 (107 at 112), decided at the January 1865 term, we said:
"* * * The public good demands that the will of the people as expressed at the ballot box should not be lightly disturbed. There is hardly an election held in any county at which in some town irregularities do not occur, and to declare every such election void would work a manifest hardship and injustice. If the votes of the citizens are freely and fairly deposited at the time and place designated by law, the intent and design of the election are accomplished. It is the will of the electors thus expressed that gives the right to the office or determines the question submitted, and the failure of the officers to perform a mere ministerial duty in relation to the election can not invalidate it, if the electors had actual notice and there was no mistake or surprise." (Italics supplied.)
With respect to the burden of proving an error in the canvass, we said (10 Minn. 86 [114]):
"* * * the person attacking the canvass must in every case show that there was error, and that that error affected the result or rendered it uncertain."
The same should be true here. The person attacking the alleged error should be required to show that the results finally certified to the state canvassing board do not reflect the true vote of the people. That has not been done here.
As far as the ten counties involved in these proceedings are concerned, it appears to us that the amended returns reflect the true vote of the people. No evidence has been submitted to us to the contrary. The objection to acceptance of the amended returns is based on technical irregularities in arriving at the result rather than on a claim *273 that the results are not right. While the most serious irregularities relate to Stearns County where apparently no notice was served on anyone as required by the statute, both parties are content to have the corrected returns from that county accepted, so we will abide by their views. Apparently the same is true of Otter Tail County. However, it would be manifestly unfair to accept the amended returns in these counties, where no attempt was made to observe the requirements of the statute guaranteeing protection of the integrity of the ballots, and to discard those where such protection was given. In the eight counties where Rolvaag objects to acceptance of the amended returns, there has been substantial compliance with the statute respecting service of notice. The candidates, or their representatives or the officials of the political parties for which they were candidates, were either notified or were present. When they were not present, they had an opportunity to be.
Our conclusion is that, while § 204.30 in all probability contemplates correction of errors committed by precinct judges at the time the original canvass is made, the results reached here establish the actual vote cast for the respective candidates and should be accepted even though some technical irregularities existed in the manner in which corrections were made. To hold otherwise would require the loser to become the winner in spite of the vote of the people.
It follows that the state canvassing board should accept the amended returns from the ten counties involved in this proceeding.
MURPHY, JUSTICE (dissenting).
At the outset it may be proper to observe that if the contestants had in due time requested appropriate relief under our election laws the real issues would have been placed in proper perspective and action could have been taken which might have obviated the undoubted irregularities which have occurred in this election contest. It is regrettable that neither party asked this court for an order to show cause under Minn. St. 203.38 why errors and omissions should not have been corrected in the various counties where they claimed such a correction would operate in their favor. But it is not surprising that in an unprecedented election, where the difference in the vote is *274 1/100th of one percent, the parties did not choose the wisest and best course. If a timely request had been made by invoking the provisions of § 203.38, this court would probably not have been placed in the position where we can differ in our legal views only at the risk of seeming partisanship.[1] Nevertheless, the writer, with due respect for the opinion expressed by the majority, is constrained to state certain legal views to the contrary.
It does not seem to me that from an examination of § 204.30 there can be found authority either express or implied which will permit a county canvassing board, once it has completed its work and certified its return to the secretary of state, to later reconvene and amend its certification. To briefly paraphrase § 204.30, it may be said that it provides that "in conducting the canvass of votes * * * as provided by law" the board may by a four-fifths vote determine that an obvious error in counting and recording the vote for a particular office has been made by the judges in a particular precinct. The statute provides that the board shall refuse to count the returns of that precinct for that office and "they shall order an inspection of the ballots and the returns of the precinct." The purpose of the inspection of the ballots and returns is to correct "the obvious error, which error shall be specified by written resolution of the board." The statute then goes on to provide the mechanics of the inspection and the duties of the canvassing board in connection therewith. § 204.30, subds. 1 to 6, inclusive. All this must be done while the board is "conducting the canvass of votes."
The statute just referred to must be read in connection with § 204.29, subds. 3 and 4, which are here relevant.[2] Subd. 3, which relates to *275 the duties of the canvassing board after a general election, provides that it shall meet at the auditor's office within 10 days after the general election and "publicly" canvass the returns. It further provides that the board shall complete the canvass "without unnecessary delay" and that it shall "forthwith" make and file its report. Subd. 4, which relates to the report of the canvassing board of the results of statewide offices, requires that the report shall be certified under the official seal of the auditor and enclosed in an envelope directed to the secretary of *276 state. The envelope shall show the auditor's name and official address with the words "Election Returns" endorsed thereon. The statute requires that two copies of the report be forwarded "by different mails within five days of each other." In the event the secretary of state fails to receive the report within 20 days after the election he is required to notify the auditor of that fact, who is then required to transmit "another copy thereof to the secretary by special messenger deputed by him."
It seems to me that a reasonable interpretation of these statutes requires a construction that the canvassing board shall act promptly; they shall publicly canvass the returns, complete their work without "unnecessary delay," and "forthwith" make their report to the secretary of state. That the legislature has provided a procedure which protects the integrity of the certifications and that there should be finality to the action of the board is indicated by the language of the statute. Moreover, it seems from the plain language of the statute that the prompt and complete canvass is to be made in the course of one canvassing proceeding. If obvious errors appear while the canvass is being conducted, they may be corrected in the manner provided by § 204.30. Where, however, the work of the canvassing board has been completed and the return has been made to the secretary of state as provided by law, there is no provision in the statute save that set forth in § 203.38 for the board to reconvene at a later date and revise or correct the official return. The law contemplates that when the canvassing board has undertaken its work it is required to continue to completion. Or, as expressed by the language of this court in Clark v. Buchanan, 2 Minn. 298 at 300 (346 at 348), "that their duties shall be entirely completed at the time they first assemble, without adjournment, except, perhaps, in case of absolute necessity, for a brief space of time. But ordinarily, even this would be unnecessary and improper." No language may be found in the statute which would permit the interpretation that the canvassing board may make a tentative return. The return must be official and final, subject only to the condition that errors and omissions may be corrected pursuant to order of court as provided by § 203.38(d). The notion that county canvassing boards may be permitted to make returns to the secretary of *277 state which are subject to later correction is repugnant to the policy of the law, which requires that in the public interest prompt official returns be made.
There is no quarrel with the contention that all of the votes should be counted. As I understand the majority interpretation of § 204.30, however, it appears that a new procedure is now established. A selective recount may now be secured in certain counties by grace of the voluntary act of canvassing boards. In other counties where the accuracy of the vote may be equally suspect the boards may arbitrarily deny a recount. The majority seems to justify this procedure on the theory that since the amended returns from the 12 precincts in question are accurate they should be included in the compilations which the state canvassing board considers. This conclusion apparently assumes that the official returns from the remaining 3,773 precincts are also accurate and that the canvassing board has before it the correct total vote. The inherent error of this assumption is apparent when it is considered that in the compilation of more than one and one-quarter million votes it is expected that errors will occur. In certain precincts errors will favor one candidate; in others they will favor the other candidate. It requires no statistical data to safely assert that these errors which occur at random throughout the 3,785 precincts of the state, to a large extent, tend to cancel each other out. Thus on a statewide level, by the inevitable process of self-correction, the margin of error tends to narrow and ordinarily the total statewide results are considered to be sufficiently accurate to provide a fair basis for action by the canvassing board. However, where selective recounts are permitted to upset the established practice, one candidate may be benefited to the prejudice of the other. The legislature never intended to permit a postelection procedure which would disturb the lawfully established practice of considering only the original official returns.
It should be an elementary principle of construction of election laws that they should not be given an interpretation which will invite abuse. The language of this court in Clark v. Buchanan, supra, is particularly appropriate. That case, which was decided prior to enactment of law providing for review as set forth in § 203.38, involved an application for a writ of mandamus to the board of county commissioners *278 of the County of Ramsey requiring them as a board of canvassers of election returns to recanvass the votes for the office of county treasurer. We there said (2 Minn. 301 [349]):
"* * * The admission of such a right [to reconvene] on their part would involve the most serious and dangerous consequences. There would seem to be no limit as to time, or as to the number of times, that they might re-assemble, and review any real or fancied errors in their canvass of the votes, and in making the abstract. It is easy to perceive that such a course would be fraught with the most serious inconveniences and evils, and nothing save express statutory authority would justify it. The statute has granted no such authority, even by implication."[3]
It is accordingly my view that all of the amended returns from the 12 precincts should be rejected. I cannot agree that the statute may permit a party to prevail in an election by grace of the belated action of the county canvassing board, voluntarily taken after its official return has been made. The most charitable observation of such a construction is that it permits the party with the most active and persuasive partisans to prematurely gain the advantage of a selective recount.
For the foregoing reasons I respectfully dissent.
FRANK T. GALLAGHER, JUSTICE (dissenting).
I concur in the dissent of Mr. Justice Murphy.
MR. JUSTICE THOMAS GALLAGHER and MR. JUSTICE MARTIN A. NELSON, having been members of the state canvassing board, took no part in the consideration or decision of this case.
NOTES
[1] In a comment by the Interim Commission preparing the draft of the Election Code adopted in 1959 we find the following:

"* * * [Minn. St. 1957] Sections 206.521 to 206.526 were passed into law in 1955. Essentially they are much needed provisions for the correction of errors of judges by the canvassing board. Not enough time has expired since the enactment to determine whether they need revision."
[2] See, for instance, Ferguson v. City of Morris, 197 Minn. 446, 267 N. W. 264; State ex rel. Maffett v. Turnbull, 212 Minn. 382, 3 N.W. (2d) 674; State ex rel. Grozbach v. Common School Dist. No. 65, 237 Minn. 150, 54 N.W. (2d) 130; State ex rel. Klitzke v. Independent Consol. School Dist. No. 88, 240 Minn. 335, 61 N.W. (2d) 410; Green v. Independent Consol. School Dist. No. 1, 252 Minn. 36, 89 N.W. (2d) 12; State ex rel. Helling v. Independent School Dist. No. 160, 253 Minn. 271, 92 N.W. (2d) 70; State ex rel. Burnquist v. Independent Consol. School Dist. No. 46, 242 Minn. 320, 65 N.W. (2d) 117; In re Order of Sammons, County Superintendent of Schools, 242 Minn. 345, 65 N.W. (2d) 198. See, also, Edson v. Child, 18 Minn. 43 (64); Id. 18 Minn. 323 (351).
[3] The prayer for relief in Rolvaag's petition covering Stearns County is:

"WHEREFORE, petitioner prays this Court for an Order pursuant to M.S.A., Section 203.38(d):
"1. Adjudging and declaring valid and lawful, nunc pro tunc the action taken by the Stearns County Canvassing Board on November 13, 1962, in correcting its official canvass of the votes cast for the office of Governor in the Township of Paynesville.
"2. Directing and ordering respondent Secretary of State to correct the Stearns County abstract, executed on November 9, 1962, to conform with the resolution of the said Canvassing Board executed on November 13, 1962, and to reduce the number of votes cast for Elmer L. Andersen for the office of Governor in Stearns County from 12,895 to 12,795.
"3. Directing and ordering the State Canvassing Board to accept, include and consider in making its declaration of election with respect to the office of Governor the statement of the Stearns County Canvassing Board as corrected and amended by its resolution of November 13, 1962."
In the petition covering the eight counties adverse to Rolvaag, his prayer for relief is:
"WHEREFORE, Upon the basis of this Petition and the affidavits and exhibits annexed hereto, Petitioner prays this Court for an Order adjudging and declaring:
"1. That county canvassing boards which have completed, filed and executed their canvass as required by law are not authorized to reconvene after the completion and filing of their original canvass without prior leave of the court pursuant to M.S.A. § 203.38.
"2. That the supplementary or amended abstracts submitted by the canvassing boards of the counties of Blue Earth, Douglas, Grant, Koochiching, LeSueur, Morrison, Stevens and Watonwan are illegal and void."
[1] It is true that, as the majority opinion indicates, Lt. Gov. Karl F. Rolvaag's attorney has requested relief under Minn. St. 203.38, but because that petition came after the state canvassing board had met there can be little quarrel with the majority conclusion that the petition was not timely presented.
[2] Minn. St. 204.29, subds. 3 and 4, provide:

"Subd. 3. The canvassing board shall meet at the auditor's office within ten days after the general election, take the oath of office, and publicly canvass the returns of the general election made to the county auditor. The board shall complete the canvass without unnecessary delay, and it shall forthwith make the following report and file the same with the county auditor:
"(a) A statement of the number of persons who voted at the election in each precinct in the county and the total number of persons who voted at the election in the county; and the number of white, pink, and canary ballots counted in each precinct in the county, and the total number of white, pink, and canary ballots counted in the county;
"(b) A statement of the names of all candidates for state offices, representatives and senators in the legislature, representatives and senators in congress, judges of the district court, and county offices; and the number of votes received by each in each precinct and in the whole county;
"(c) A statement of the total number of votes counted for and against any proposed change of county lines or county seat; and
"(d) A statement of the number of votes counted for and against any constitutional amendment or other proposition in any precinct, and the total number of votes counted therefor in the county.
"In case of a tie, the canvassing board shall determine the results by lot. Upon completion of the canvass, the board shall declare the person receiving the highest number of votes for each county office duly elected thereto; and when the county constitutes or contains a senatorial or representative district in the legislature, it shall declare the person receiving the highest number of votes for each office in the legislature duly elected.
"Subd. 4. Two copies of each of the statements required in this section shall be made and certified under the official seal of the auditor; each enclosed in an envelope directed to the secretary of state, with the auditor's name and official address and the words, `Election Returns,' endorsed thereon, and forwarded by different mails within five days of each other. If neither copy is received by the secretary of state within 20 days after the election, he shall immediately notify the auditor of that fact, and the auditor shall transmit another copy thereof to the secretary by special messenger deputed by him."
[3] See, also, Annotation, 168 A.L.R. 855, 856, 859; 29 C.J.S., Elections, § 239; 18 Am. Jur., Elections, § 256; Bowen v. Hixon, 45 Mo. 340.